UNIVERSITY OF VIRGINIA,
Appellant,

v.

John B. ROBERTSON, Appellee.

No. 5:99cv00046.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 27, 2000.

Ronald C. Forehand, Mark L. Earley, Ashley L. Taylor, Jr., William Eugene Thro, University of Virginia, Charlottesville, VA, for Appellant.

John B. Robertson, Dayton, VA, pro se.

## MEMORANDUM OPINION

KISER, Senior District Judge.

Before me now is an appeal from a bankruptcy court order denying a motion to dismiss submitted by appellant University of Virginia ("UVA"). UVA, by and through the Commonwealth of Virginia ("Virginia"), argues that sovereign immunity bars the proceeding initiated against them in the bankruptcy court.

The Attorney General of Virginia fully briefed the issue. The *pro se* appellee provides no timely filed brief. No oral argument was requested or heard. Thus, this motion is ripe for disposition. For the reasons set forth herein, the bankruptcy court's order denying the appellant's motion to dismiss is hereby **REVERSED** and **REMANDED** for further disposition consistent with this Memorandum Opinion and contemporaneously filed Order.

### I. Background

#### i. Factual and Procedural Summary

Appellee John Robertson ("Mr. Robertson" or "Debtor") obtained educational loans to pay expenses while attending UVA. Financial difficulties compelled Mr. Robertson to voluntarily file for bankruptcy relief under Chapter Seven of the Bankruptcy Code in August 1998. The UVA loans were listed in his bankruptcy court filings. UVA did not file a proof of claim.

On October 30, 1998, Mr. Robertson filed an "adversary proceeding" against UVA asking the bankruptcy court to declare that student loans owed to UVA are dischargeable under 11 U.S.C. § 523(a)(8) (student loans, normally excepted from discharge, may be discharged if the debtor shows undue hardship ). Pursuant to that adversary proceeding the bankruptcy court mailed to UVA a "Summons and Notice of Pre–Trial Conference." That summons requires UVA to file "either a motion or an answer to the complaint which is now served upon you" and further says that "The motion or answer served by you must be filed with this court either

before service or within a reasonable time after service. IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS SUMMONS, JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED BY THE COMPLAINT." *See* Index No. 2, Record on Appeal (capitalization in original).

When UVA did not appear for that pretrial conference nor file a responsive pleading, the bankruptcy court entered an order setting another pretrial conference and providing that if UVA did not appear or, once again, fail to file a responsive pleading, a default judgment against UVA would be entered. Virginia, on behalf of UVA, timely filed a motion to dismiss the adversary proceeding on the grounds of sovereign immunity. The bankruptcy court denied that motion. This appeal followed.[1] I review decisions of law within the bankruptcy court decision *de novo*.[2]

### ii. *Bankruptcy Court Procedures*

In a Chapter Seven bankruptcy proceeding, the debtor asks the bankruptcy court to take control over his assets, sell them, and distribute the proceeds among creditors—thus, Chapter 7 is commonly known as a "liquidation proceeding." The "fresh start" principles of bankruptcy are statutorily embodied within 11 U.S.C. § 727(a) that, generally, directs the bankruptcy court to grant a full discharge from all dischargeable debts. This discharge order bars a creditor from pursuing any pre-order dischargeable debts. *See* 11 U.S.C. § 727(b) (1993) (noting that § 727(a) "discharges the debtor from all debts that arose before the date of the order for relief ... whether or not a proof of claim based on any such debt or liability is filed ... and whether or not a claim based on any such debt or liability is allowed ...."). A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect ... any such debt as a personal liability of the debtor ...." 11 U.S.C. § 524(a)(2) (1993).

A proceeding to determine the dischargeability of a debt is called an adversary proceeding, *see* Fed. R. Bank. P. 7001(6), as is a proceeding seeking a declaratory judgment regarding the dischargeability of a debt, *see* Fed. R. Bank. P. 7001(9).[3] Formal pleadings are found in adversary proceedings. *See* 10 Collier on Bankruptcy ¶ 7000–1 (Rel.60–12/96). Rules of an adversary proceeding generally conform to the Federal Rules of Civil Procedure. *See* 9 Collier on Bankruptcy ¶ 4004.05 (Rel.72–12/99). Specifically, for instance, the procedural requirements for service of process found in Fed.R.Civ.P. 4 are adopted in large part, *see* Fed. R. Bank. P. 7004(a), including the requirement that service of a summons accompany a copy of the complaint. The rule for default judgments, *see* Fed.R.Civ.P. 55, is also adopted. *See* Fed. R. Bank. P. 7055. Discovery rights are available just as in civil litigation. *See* 9 Collier on Bankruptcy ¶ 4004.05 (Rel.72–12/99). Either a debtor or creditor may file a complaint to determine if a debt is dischargeable. *See* Fed. R. Bank. P. 4007(a).

Rule 4004 governs the procedure the bankruptcy court uses to determine if a discharge at all will be entered in the case. In Chapter Seven, a complaint objecting to a debtor's § 727(a) discharge must be timely filed, *see* Fed. R. Bank. P. 4004(a), or else the bankruptcy court "shall forthwith grant the discharge" unless certain filings remain pending or the debtor is

---

1. Jurisdiction over this appeal is proper. *See* 28 U.S.C. § 158(a) (Supp.1998).

2. *See In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992).

3. The dischargeability of a debt within § 523(a)(8) may be determined by other courts unless a complaint is filed with the bankruptcy court. 9 Collier on Bankruptcy ¶ 7001.07 (Rel.72–12/99) (Lawrence P. King ed., 15th ed.1999).

not an individual. *See* Fed. R. Bank. P. 4004(c)(1). A proceeding "to object to a discharge" is filed as an adversary proceeding, *see* Fed. R. Bank. P. 4004(d), and "must be commenced by a complaint." 9 Collier on Bankruptcy ¶ 4004.05 (Rel.72–12/99). A proceeding to determine if a particular debt is dischargeable also "must be filed as [an] adversary proceeding ... [and] must be commenced by a complaint ... A response to the complaint is required to prevent a default...." *See* 9 Collier on Bankruptcy ¶ 4007.06 (Rel.72–12/99); *see also* Fed. R. Bank. P. 4007.

Finally, "an unsecured creditor ... must file a proof of claim or interest for the claim or interest to be allowed...." Fed. R. Bank. P. 3002(a). This requirement, along with the time limits to object to a discharge and the permanency of a discharge order's effect on pre-petition debts, works to compel a creditor to enter the fray of a bankruptcy proceeding or suffer the determination of their rights in their absence.

## II. *Discussion*

■ A review of Fourth Circuit and Supreme Court case law leads me to conclude that the appellee's adversary proceeding is a "suit" against one of the United States. Accordingly, Virginia rightfully invokes sovereign immunity to bar this court's jurisdiction.[4] Specifically, this adversary proceeding names Virginia as a defendant and is supported by a summons, served on Virginia, compelling submission to federal court. No waiver or abrogation of sovereign immunity applies.

4. UVA may advance the Eleventh Amendment and sovereign immunity as if they were Virginia itself, *see Richard Anderson Photography v. Brown*, 852 F.2d 114 (4th Cir.1988); *Collin v. Rector & Visitors of Univ. of Virginia*, 873 F.Supp. 1008, 1013 (W.D.Va.1995); *DeBauche v. Virginia Commonwealth Univ.*, 7 F.Supp.2d 718, 722 (E.D.Va.1998), and this opinion may use the two interchangeably.

5. *See Kimel v. Florida Bd. of Regents*, —— U.S. ——, 120 S.Ct. 631, 642–43, —— L.Ed.2d —— (2000) ("[C]ongress lacks power under Article I to abrogate the States' sovereign immunity ... [e]ven when the Constitution vests in Con-

### i. *Sovereign Immunity is not Abrogated or Waived*

■ The Eleventh Amendment provides that "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. The Supreme Court says that this amendment's bar to federal jurisdiction also applies to suits brought by a citizen against his own state. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment is, therefore, the constitutional text representing a State's "sovereign immunity" and reflects the federalism of our nation at its inception. *See Alden v. Maine*, 527 U.S. 706, ——, 119 S.Ct. 2240, 2246–47, 144 L.Ed.2d 636 (1999).

■ Sovereign immunity prevents the federal courts from entertaining a suit brought against a state unless that state consents to federal jurisdiction. *See Litman v. George Mason Univ.*, 186 F.3d 544, 550 (4th Cir.1999), petition for cert. filed, 68 U.S.L.W. 3263 (Oct. 5, 1999) (No. 99–596). An unconsenting state may be sued in federal court, however, if Congress abrogates its sovereign immunity. Because the federal judiciary derives its powers from Article III of the Constitution, Congress may abrogate only when legislating pursuant to their power to enforce the Fourteenth Amendment.[5] Congress'

gress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states.") (citing to *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)) (Article I cannot expand Article III's federal court jurisdiction); *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 2228, 144 L.Ed.2d 605 (1999); *Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 119 S.Ct. 2199, 2210–11, 144 L.Ed.2d 575 (1999);

bankruptcy powers, by contrast, stem from the Bankruptcy Clause within Article I. *See* U.S. Const., art. I, § 8, cl. 4 ("The Congress shall have Power ... To establish ... uniform Laws on the subject of Bankruptcy throughout the United States...."). The Fourth Circuit therefore holds that Congress' attempt to abrogate state sovereign immunity under the Bankruptcy Clause, as set forth in 11 U.S.C. § 106, is unconstitutional. *See Schlossberg v. Maryland,* ("*Schlossberg*") 119 F.3d 1140, 1145–46 (4th Cir.1997), cert. denied, 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998) (dismissing an adversary proceeding that argued taxes paid to the state were a preference and, also, finding no evidence that the abrogation effort was pursuant to the Fourteenth Amendment, especially "when a specific, substantive Article I power clearly enabled the law.").

A state may elect to waive its sovereign immunity. If a state files a proof of claim with the bankruptcy court it waives its sovereign immunity. *See e.g., Schlossberg,* 119 F.3d at 1148–49 (state's proof of claim filing for *sales and withholding* taxes does not waive sovereign immunity regarding *corporate* taxes due the state). Because UVA filed no proof of claim whatsoever it is undisputed that they have not waived any sovereign immunity.

### ii. *This Adversary Proceeding is a Suit against the State*

For the Eleventh Amendment to bar federal jurisdiction, the action against the state must be a "suit." The Fourth Circuit recently observed, in its latest opinion addressing sovereign immunity in the bankruptcy context, how the Supreme Court characterizes a suit for Eleventh Amendment purposes:

'What is a suit? We understand it to be the prosecution, or pursuit, of some

*Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 2246–47, 144 L.Ed.2d 636 (1999) (internal quotations omitted); *see Kimel,* 120 S.Ct. at 643 ("Section 5 of the Fourteenth Amend-

claim, demand, or request. In law language, it is the prosecution of some demand in a court of justice. The remedy for every species of wrong is ... the being put in possession of that right whereof the party injured is deprived ... The instruments whereby this remedy is obtained, are a diversity of suits and actions ...' *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 407–08, [5 L.Ed. 257] (1821) (internal quotation marks omitted) ... A thorough analysis of whether a judicial proceeding constitutes a suit must accordingly consider both the procedural posture and substantive nature of the proceeding. Moreover, if the substance of 'the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit.' *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

*In re NVR, LP v. Clerks of the Circuit Courts,* 189 F.3d 442, 450 (4th Cir.1999), cert. denied, —— U.S. ——, 120 S.Ct. 936, —— L.Ed.2d —— (2000).

*In re NVR* holds that a petitioner's bankruptcy court motion to recoup tax payments paid to a state treasury is a "suit" for Eleventh Amendment purposes because any federal court order would operate as raid on an unconsenting state's treasury. The action must be a "suit," the analysis continues, because if the federal court can not enforce the order then the order is merely advisory and lacks constitutionality under Article III. *See In re NVR,* 189 F.3d at 452–53; *Linda R.S. v. Richard D.,* 410 U.S. 614, n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (citation omitted).

The bankruptcy court in *In re NVR* confirmed a Chapter Eleven reorganization plan ordering that property transfers

ment, however, does grant Congress the authority to abrogate the States' sovereign immunity.").

made according to the plan are, per 11 U.S.C. § 1146(c), free from taxation. Nevertheless, the debtor paid transfer and recordation taxes to state authorities during the bankruptcy period. Once emerged from bankruptcy, the debtor filed a Rule 9014 "Contested Matters" motion to determine if it had to pay those taxes during the bankruptcy period given the bankruptcy court order. Although no summons was issued and the state was, therefore, "free to join the action, but was not compelled to submit to federal court jurisdiction," *In re NVR*, 189 F.3d at 452–53, the court says that

> The ultimate resolution of the dispute between NVR and the states does require, however, that the federal courts exercise jurisdiction over the states ... if the federal court action could not result in ordering the states to return the tax payments, then any opinion issued would be advisory and improper.... This finding alone is enough to determine that the action, if it is to meet the requirements of Article III, is a suit against the states.... NVR is demanding payment from the [state] treasuries. Although federal law may reign supreme in the bankruptcy context, the federal courts do not necessarily reign supreme over an unconsenting state's treasury.... an action leading to an order forcing a payment to citizens is the quintessential 'suit' under the Eleventh Amendment.

*In re NVR*, 189 F.3d at 453.

The facts before me differ from *In re NVR*. For instance, *In re NVR* involves a debtor's motion asking a federal court to dispossess the state of something the state presently possesses. Here, the debtor (Mr. Robertson) asks, by adversary proceeding, that this federal court block the state from possessing something the state does *not* presently possess—that is, that he does not have to turn over assets to the state treasury. Because of this distinction, other Fourth Circuit rulings are examined.

The Fourth Circuit's earlier *Antonelli* decision holds that the Eleventh Amendment is not implicated when a bankruptcy court, by a confirmation order, prevents the assessment of certain state taxes when bankruptcy estate assets are sold according to that order. *Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777 (4th Cir.1997). In that Chapter Eleven reorganization, the bankruptcy court confirmed a plan whereby the debtors real property is transferred into a trust, the trust sells the real property, and all transfers of the property—from the debtors to the trust and from the trust to third-party purchasers—are, also pursuant to 11 U.S.C. § 1146(c), exempt from state taxes. The state taxing authority did not go to the confirmation hearing, it did not appeal the court order, nor did it try to collect taxes when the land was transferred. Subsequently, however, the state sued the trust and certain third-party purchasers for transfer and recordation taxes.

*Antonelli* says confirmation of that reorganization plan is not a "suit" because the state is not a named defendant and it was not served with process mandating appearing in federal court. *Antonelli*, 123 F.3d at 786. Bankruptcy court jurisdiction to confirm the plan and interpret federal law "derives not from jurisdiction over the state ... but rather from jurisdiction over debtors and their estates." *Id.* at 787. The state was served with notice and could have voluntarily entered the federal court proceedings, the *Antonelli* court notes.[6]

---

**6.** *Antonelli* notices how their logic presents the state with a dilemma:

> It is true that if a state wishes to challenge a bankruptcy court order of which it receives notice, it will have to submit to federal jurisdiction.... The state, of course, well may choose not to appear in federal court. But that choice carries with it the consequence of foregoing any challenge to the federal court's actions. While forcing a state to make such a choice may not be ideal from the state's perspective, it does not amount to the exercise of federal judicial power to hale a state into federal court against its will and in violation of the Eleventh Amendment. Instead, it is the result

Confirming a reorganization plan is different from entertaining an adversary proceeding that causes "the bankruptcy court to issue process summonsing the state to appear. Such an adversary proceeding would be a suit 'against one of the United States' " and its adjudication would depend on the court's jurisdiction over the state, implicating the Eleventh Amendment. *Antonelli*, 123 F.3d at 787 (citing to *Schlossberg*, 119 F.3d at 1148).

The Fourth Circuit has relied on *Antonelli*. *See Virginia v. Collins*, 173 F.3d 924 (4th Cir.1999), cert. denied, —— U.S. ——, 120 S.Ct. 785, —— L.Ed.2d —— (2000) (No. 99–380). In *Collins*, Virginia obtained judgments against a debtor who later filed Chapter Seven. The bankruptcy filing listed Virginia's judgments and, accordingly, Virginia received notice of the proceedings. Virginia did not file a proof of claim nor did they object when the bankruptcy court order released the debtor from all dischargeable debts. Years later, however, Virginia sued to garnish the debtor and collect their judgments. The debtor moved to reopen his bankruptcy case to determine if the judgment debt from the forfeited bail bonds is dischargeable. Because Virginia was mailed a copy of this motion but "was not named a defendant in any adversary proceeding or served with process," *Collins*, 173 F.3d at 926, *Collins* held that the motion to reopen the bankruptcy proceeding is not a suit against the state. *Collins*, 173 F.3d at 929.

The Fourth Circuit remarked, again, how an adversary proceeding requires compulsory process, such as a summons to appear, and differs from a motion where the state is not named as a defendant, is not served with process, and is not compelled to appear in bankruptcy court. *Collins*, 173 F.3d at 929–30. Instead, the state was "free to respond to the motion or ignore it. In these circumstances, the motion to reopen was not a suit ... within the meaning of the Eleventh Amendment." *Collins*, 173 F.3d at 929 (citing *Antonelli*).[7]

The *In re NVR* court recounts the earlier Fourth Circuit decisions and construes them as follows: *Schlossberg* holds that a debtor's adversary proceeding, seeking return of property from the state, violates the Eleventh Amendment and that Congress did not validly abrogate the state's sovereign immunity, *In re NVR*, 189 F.3d at 451; *Antonelli* says the Eleventh Amendment does not protect a state from the effects of a proceeding that confirms a reorganization plan and rules whether the plan complies with federal law, *In re NVR*, 189 F.3d at 451–52; *Collins* says a motion to reopen a bankruptcy case to determine the dischargeabilty of a debt is not a suit for Eleventh Amendment purposes, *In re NVR*, 189 F.3d at 451. Each of these decisions illuminate, but do not precisely decide, the case at bar.

An independent review of Fourth Circuit rulings makes clear that the Eleventh Amendment bars a bankruptcy action asking the court to take away an asset presently in the state's possession. *See In re NVR*, 189 F.3d 442 (debtor's action is a motion); *Schlossberg*, 119 F.3d

---

of Congress' constitutionally authorized legislative power to make federal courts the exclusive venue for administering the bankruptcy law.

*Antonelli*, 123 F.3d at 787.

7. The Fourth Circuit recognizes, again, the state's difficult situation:

In short, if a state wishes to share in the estate, it must submit to federal jurisdiction.... The discharge order clears all dischargeable debts, including those owed to a state ... While the Commonwealth was served with notice of the motion to reopen, it was free to stay away from bankruptcy court or to appear for the hearing. We recognize that this put the Commonwealth in a tough spot. It could decline to appear and thereby forego the opportunity to make its argument and challenge any decision. On the other hand, it could voluntarily submit to federal jurisdiction and take part in the proceedings.... The Eleventh Amendment was not implicated.

*Collins*, 173 F.3d at 930–31.

1140 (debtor action is an adversary proceeding). By contrast, the Eleventh Amendment does *not* bar certain bankruptcy actions asking the court to, in effect, block the state from possessing an asset that it does not presently possess. *See Antonelli*, 123 F.3d 777 (confirmation order blocks state suit to collect); *Collins*, 173 F.3d 924 (motion to reopen and discharge blocks state suit to collect).

Because Mr. Robertson asks this court to rule that Virginia will not possess an asset that Virginia does not presently possess *Antonelli* and *Collins* suggest that the sovereign immunity defense be denied. Mr. Robertson's chosen means to request such relief is, however, an adversary proceeding. This adversary proceeding names Virginia as a defendant and caused the bankruptcy court to issue Virginia a summons to appear in the bankruptcy court. Lest Virginia fail to appreciate the effect of the summons and the consequences for ignoring the adversary proceeding the bankruptcy court warns that "IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS SUMMONS, JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED BY THE COMPLAINT." *See* Index No. 2, Record on Appeal (capitalization in original). This adversary proceeding is, according to the language cited from *Antonelli, Schlossberg*, and *Collins, supra*, a "suit" for Eleventh Amendment purposes. *See also, Texas v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998) ("Support for our view that the ... commencement of certain adversary proceedings directly against a state that has not filed a proof of claim in a bankruptcy case would [offend the Eleventh Amendment] derives from hoary Supreme Court authority."). Virginia's sovereign immunity defense bars the bankruptcy court of

jurisdiction over Mr. Robertson's adversary proceeding.

*In re NVR* arguably requires that the state presently possess the asset for the Eleventh Amendment defense to trigger:

> The 'suit' clearly sought a determination that the states owed NVR money—repayment of exempt transfer and recordation taxes—and a favorable decision would require that a federal court raid [the state] treasuries. Because NVR 'commenced or prosecuted' a suit against the states, sovereign immunity applies, and the suit is barred as to the states.... our constitutional power to enforce federal bankruptcy law, absent a waiver of immunity, does not allow for the forced extraction of payments from a sovereign state's treasury.

*In re NVR*, 189 F.3d at 454.

This reasoning does not upset my ruling that Mr. Robertson's adversary proceeding implicates the Eleventh Amendment. Specifically, *In re NVR* involves a Fed. R. Bank. P. 9014 motion and, therefore, need not tangle with the Fourth Circuit's earlier pronouncements on the Eleventh Amendment consequences of an adversary proceeding.

 The decision before me means that a state may assert sovereign immunity when a debtor asks, by motion or adversary proceeding, that a federal court dispossess that state of an asset presently in its possession. It also means that sovereign immunity applies when a debtor initiates an adversary proceeding (with service of a summons and compulsory process) asking a court to prevent the state from receiving possession of an asset in the estate's possession. A debtor may still, accordingly, file a *motion* asking the court to block the transfer of an asset presently in the debtor's estate to a state treasury.[8]

---

**8.** The various Fourth Circuit decisions discussed herein compels this patchwork outcome. It seems that if the state has a valid unsecured claim for an asset the Bankruptcy Code mandates that the state file a proof of claim, thus waiving any sovereign immunity, or else suffer the permanent consequences of a discharge order. This "Hobson's Choice" is recognized by the Fourth Circuit, *see, supra* n. 6, 7; Webster's Tenth New Collegiate Dictionary 551 (1996) (a Hobson's Choice is an apparently free choice when there is no real

The bankruptcy court's order denying the appellant's motion to dismiss is hereby **REVERSED** and **REMANDED** for further disposition consistent with this Memorandum Opinion and contemporaneously filed Order.

An appropriate order shall issue.

alternative). While the Eleventh Amendment is certainly triggered when a state is named a defendant and served with a summons in an adversary proceeding to extract a state asset, I fail to see why the coercive nature of the Fourth Circuit's sanctioned Hobson's Choice is less troublesome to our nation's federalism. *See Seminole Tribe,* 517 U.S. at 58, 116 S.Ct. 1114 ("The Eleventh Amendment does not exist solely in order to prevent federal court judgments that must be paid out of a State's treasure, it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."); *see also,* 2 Collier on Bankruptcy 106.02[1][b] (Rel.65–3/98) (listing "means available to individuals to ensure that a state is complying with federal law.").