In re NATIONAL CATTLE CONGRESS, Debtor.

**Bankruptcy No. 97–03581–W.**

United States Bankruptcy Court, N.D. Iowa.

March 22, 2000.

John Titler, Cedar Rapids, IA, for debtor.

Steve Olson, Jack Blair, Minneapolis, MN, for Sac and Fox Tribe of the Mississippi in Iowa.

### ORDER

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on March 8, 2000 pursuant to assignment. The matter at issue is the Court's jurisdiction over the Sac and Fox Tribe. Attorney John Titler represented Debtor National Cattle Congress, Inc. Attorneys Steven Olson and Jack Blair represented the Sac and Fox Tribe of the Mississippi in Iowa. After argument by counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

### STATEMENT OF THE CASE

Debtor's Chapter 11 Plan proposes to extinguish a real estate mortgage lien held by the Sac and Fox Tribe ("the Tribe"). In exchange, Debtor offers a restrictive covenant prohibiting gambling on the property. The Tribe argues its sovereign

immunity prevents this Court from allowing Debtor to negate its legal rights in the mortgage lien through a Chapter 11 Plan.

## FINDINGS OF FACT

This is Debtor's second Chapter 11 reorganization. In its first filing, Debtor's Plan paying all creditors in full was implemented through a "bail-out" by the Sac and Fox Tribe. Debtor and the Tribe entered into a Master Agreement through which the Tribe paid $9.1 million to Debtor in exchange for a note and mortgage creating a lien on all of Debtor's real estate, Debtor's agreement not to carry on gambling activities on its property, and other provisions concerning management of Debtor's property and businesses. The Court confirmed Debtor's plan in the first Chapter 11 case on January 17, 1996.

The Tribe was not a creditor in Debtor's first Chapter 11 case. It entered no appearance in the case and filed no claims. After confirmation of the plan, on March 6, 1996, the Tribe, represented by attorneys Robert Wilson and John Stitely, filed an "Application to Modify Chapter 11 Plan of Debtor and Modify the Order re: Confirmation of Plan." Debtor filed a Motion to Strike the Tribe's Application. On March 21, 1996, Attorneys Wilson and Stitely filed a motion to withdraw as counsel for the Tribe. On March 29, 1996, the Tribe, represented by substitute counsel, withdrew the Application to Modify.

Debtor filed the pending Chapter 11 case on November 20, 1997. Its Plan of Reorganization seeks to restructure the rights and obligations between Debtor and the Tribe under the Master Agreement. Essentially, the Plan proposes to extinguish the mortgage lien and other rights of the Tribe under the Master Agreement in exchange for a restrictive covenant on the real estate prohibiting use of the premises for gambling or gaming of any type.

On March 20, 1998, the Tribe filed a Proof of Claim in this case in the amount of $9,199,892, of which $9.1 million is claimed secured by Debtor's real estate.

Attached to the Proof of Claim is a Waiver Disclaimer. The disclaimer states that the Tribe filed the proof of claim to preserve all rights with regard to its mortgage lien. Further, it states:

> By filing a proof of claim, the Tribe does not intend to participate in or submit to any plan of reorganization or in any way compromise its secured interest. Nor does the Tribe intend, by this filing, to submit to the jurisdiction of this or any other forum with regard to any adversary proceeding. The Tribe hereby expressly retains its sovereign immunity from adversary proceedings.

Claim No. 16, Waiver Disclaimer (filed Mar. 20, 1998).

The Tribe filed a "Motion to Dismiss Petition as it Relates to the Sac & Fox Tribe of the Mississippi in Iowa, and, in the Alternative, Objections to Debtor's Proposed Plan of Reorganization" on January 24, 2000. Among other things, the Tribe asserts its sovereign immunity bars this Court from altering the Tribe's security interest in Debtor's property. The Tribe also asserts other collateral arguments regarding the Court's jurisdiction. The Court carved out these jurisdictional issues for hearing prior to consideration of the remainder of the Tribe's Motion to Dismiss and Objections to the Plan.

The focus of this matter is the Tribe's sovereign immunity. The Tribe also asserts Debtor is improperly attempting to determine the validity, priority, or extent of its lien in the confirmation process rather than through an adversary proceeding. Further, the Tribe argues this is not a core proceeding and does not present a justiciable "case or controversy."

Debtor argues the Code allows modification of rights of secured creditors in a Chapter 11 Plan. It asserts it is not seeking to determine the validity, priority or extent of the Tribe's lien. Rather, Debtor is extinguishing the Tribe's lien in the Chapter 11 reorganization process by offering the "indubitable equivalent" in its

Plan. Debtor argues the Code abrogates the Tribe's sovereign immunity. In the alternative, Debtor asserts the Tribe waived its sovereign immunity by appearing in the first Chapter 11 case and by filing a proof of claim in this case. Additionally, Debtor asserts that confirmation of its Plan is not a suit against the Tribe and therefore is not barred by sovereign immunity.

## CONCLUSIONS OF LAW

 General acts of Congress apply to Indians as well as to all others in the absence of a clear expression to the contrary. *Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 120, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960); *E.E.O.C. v. Fond du Lac Heavy Equip. & Constr. Co.*, 986 F.2d 246, 248 (8th Cir.1993). This general rule does not apply when the interest sought to be affected is a specific right reserved to the Indians. *Fond du Lac*, 986 F.2d at 248. As otherwise stated, general statutes presumptively apply to Indian tribes unless such application would: 1) abrogate rights guaranteed under an Indian treaty; 2) interfere with purely intramural matters dealing with the tribe's right to self-governance; or 3) contradict the intent of Congress. *Florida Paraplegic Assoc., Inc. v. Miccosukee Tribe*, 166 F.3d 1126, 1129 (11th Cir.1999). General federal laws which courts have recently found broad enough to apply to Indian tribes include OSHA and ERISA. *Id.* n. 3. A tribe's commercial dealings with non-Indians are not "matters dealing with the tribe's right to self-governance." *Id.*

 The Bankruptcy Code is a general statute having broad application. Congress has not expressed a clear and plain intent to except Indian tribes from its application. Thus, the Code presumptively applies to Indian tribes. *See In re Sandmar Corp.*, 12 B.R. 910, 917 (Bankr.D.N.M. 1981) (finding Bankruptcy Code applies to subject Tribe to automatic stay); *Aubertin v. Colville Confederated Tribes*, 446 F.Supp. 430, 435 (E.D.Wash.1978) (applying Bankruptcy Act to Indian tribe). General application of the Code to Indians does not abrogate rights under an Indian treaty, interfere with the Tribe's right to self-governance, or contradict Congressional intent.

 Although Indian Tribes may be subject to general federal laws, they continue to enjoy immunity from suits. The Supreme Court recently noted that there is a difference between the right to demand compliance with general laws and the means available to enforce them. *Kiowa Tribe v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). This principle spells out the distinction between a right and a remedy. *Florida Paraplegic*, 166 F.3d at 1130. While the Bankruptcy Code applies to the Tribe, the Tribe can, nevertheless, retain its sovereign immunity from suit under the Code. "[W]hether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions." *Id.* (emphasis in original).

 It is undisputed that an Indian Tribe enjoys sovereign immunity from suit. *Hagen v. Sisseton–Wahpeton Comm. College*, 205 F.3d 1040, 1043 (8th Cir.2000). "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Indian tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation or settlement. *Id.* Sovereign immunity is a jurisdictional question. *Hagen*, 205 F.3d at 1043.

## ABROGATION OF SOVEREIGN IMMUNITY BY CONGRESS

 Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by

sovereign powers. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 512–513, 60 S.Ct. 653, 84 L.Ed. 894 (1940). "This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But 'without congressional authorization,' the 'Indian Nations are exempt from suit.'" *Santa Clara Pueblo,* 436 U.S. at 59, 98 S.Ct. 1670; *In re Prairie Island Dakota Sioux,* 21 F.3d 302, 304 (8th Cir.1994). Abrogation by Congress of sovereign immunity cannot be implied but must be unequivocally expressed. *Santa Clara Pueblo,* 436 U.S. at 59, 98 S.Ct. 1670. Applying these principles, the court in *Florida v. Seminole Tribe,* 181 F.3d 1237, 1242 (11th Cir.1999), stated: "Congress may abrogate a sovereign's immunity only by using statutory language that makes its intention unmistakably clear, and ... ambiguities in federal laws implicating Indian rights must be resolved in the Indians' favor." *See also State v. Whitebreast,* 409 N.W.2d 460, 461 (Iowa 1987) (considering the extent of Congress' abrogation of immunity for civil causes of action in Public Law 280).

Debtor argues that § 106(a) of the Bankruptcy Code evinces Congress' unequivocal intent to abrogate the sovereign immunity of Indian tribes. § 106(a) states:

§ 106. Waiver of sovereign immunity

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

Reference to the definition of "governmental unit" is necessary to determine the scope of § 106(a). "Governmental unit" is defined in § 101(27) as follows:

(27) "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government;

The Supreme Court has found that this language reflects Congress' clear intent to abrogate the sovereign immunity of States under the Eleventh Amendment. *Seminole Tribe v. Florida,* 517 U.S. 44, 57, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (finding Congress did not have the authority to do so). Section 106(a) has also been found to effectively abrogate the sovereign immunity of foreign states. *In re Tuli,* 172 F.3d 707, 711 (9th Cir.1999) (concluding Iraq can no longer assert sovereign immunity under the Code after the 1994 amendment to § 106(a)).

Two Bankruptcy Courts have found § 106 sufficient to abrogate sovereign immunity of Indian tribes. Most recently, the court in *In re Vianese,* 195 B.R. 572, 576 (Bankr.N.D.N.Y.1995), held that the 1994 amendment to § 106(a) applies to Tribes which are "domestic dependent nations" and thus qualify as governmental units. The court in *In re Sandmar Corp.,* 12 B.R. 910, 916 (Bankr.D.N.M.1981), also found that an Indian Tribe was a "governmental unit" under the § 101 definition then in effect.

In *In re Greene,* 980 F.2d 590, 592 (9th Cir.1992), *cert. denied,* 510 U.S. 1039, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994), the court considered whether a Chapter 7

trustee could sue an Indian tribe to avoid a preferential transfer. It queried whether the Bankruptcy Code shows an intent to subject the tribe to bankruptcy court jurisdiction. *Id.* at 597. The court dismissed the adversary proceeding, concluding that the bankruptcy court's jurisdiction over property of the estate and adversary proceedings does not act to pierce the tribe's immunity from suit. *Id.* at 598. Since only Congress can limit the scope of tribal immunity and has not done so, the tribes retain the immunity sovereigns enjoy at common law. *Id.* at 594.

Debtor urges the Court to follow *Vianese* to find that the Tribe's sovereign immunity is abrogated under § 106(a). The Tribe argues the language of the Code is not sufficiently unequivocal to abrogate its immunity from suit. In *Santa Clara Pueblo,* the Supreme Court considered whether the Indian Civil Rights Act included congressional abrogation of tribal sovereign immunity. 436 U.S. at 59, 98 S.Ct. 1670. It found that "[n]othing on the face of ... the ICRA purports to subject tribes to the jurisdiction of the federal courts in civil actions." *Id.; Poodry v. Tonawanda Band of Seneca Indians,* 85 F.3d 874, 898 (2d Cir.) (following *Santa Clara Pueblo* ), *cert. denied,* 519 U.S. 1041, 117 S.Ct. 610, 136 L.Ed.2d 535 (1996).

▆▆▆ Courts have found abrogation of tribal sovereign immunity in cases where Congress has included "Indian tribes" in definitions of parties who may be sued under specific statutes. *See Blue Legs v. United States Bureau of Indian Affairs,* 867 F.2d 1094, 1097 (8th Cir.1989) (finding congressional intent to abrogate Tribe's sovereign immunity with respect to violations of the Resource Conservation and Recovery Act); *Osage Tribal Council v. United States Dep't of Labor,* 187 F.3d 1174, 1182 (10th Cir.1999) (same re Safe Drinking Water Act). "Where the language of a jurisdictional grant is unambiguous as to its application to Indian tribes, no more is needed to satisfy the *Santa Clara* requirement than that Congress unequivocally state its intent." *Osage Tribal Council,* 187 F.3d at 1182.

Where the language of a federal statute does not include "Indian tribes" in definitions of parties subject to suit or does not specifically assert jurisdiction over "Indian tribes", courts find the statute insufficient to express an unequivocal congressional abrogation of tribal sovereign immunity. *See Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 357–58 (2d Cir.2000) (holding Indian tribe immune from suit under the Copyright Act); *Florida Paraplegic,* 166 F.3d at 1131 (stating that because Congress made no specific reference to Tribes anywhere in the ADA, tribal immunity is not abrogated; suit under ADA dismissed). A Congressional abrogation of tribal immunity cannot be implied. *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. 1670.

▆▆▆ Based on the foregoing, the Court concludes that Congress has not unequivocally abrogated the Tribe's sovereign immunity to suit under the Bankruptcy Code. The Code makes no specific mention of Indian tribes. Unlike States and foreign governments, Indian tribes are not specifically included in the § 101(27) definition of "governmental unit". In order to conclude Congress intended to subject Indian tribes to suit under the Code, the Court would need to infer such intent from language which does not unequivocally and unambiguously apply to Indian tribes. Considering the Supreme Courts pronouncements on tribal sovereign immunity, such an inference is inappropriate. Congress has not abrogated the Tribe's immunity from suit under the Bankruptcy Code. The Tribe is not subject to suit by Debtor absent a clear waiver by the Tribe itself.

### WAIVER OF SOVEREIGN IMMUNITY BY TRIBE

▆▆▆ Debtor argues the Tribe waived its sovereign immunity from suit by participating in its first Chapter 11

proceeding and by filing a claim in this proceeding. A tribe's waiver of immunity from suit must be unequivocally expressed. *Rosebud Sioux Tribe v. Val–U Constr. Co.,* 50 F.3d 560, 562 (8th Cir.1995) (filing of lawsuit is not a waiver of immunity from counterclaims), *cert. denied,* 516 U.S. 819, 116 S.Ct. 78, 133 L.Ed.2d 37 (1995). Nothing short of a clear, express waiver satisfies the requirement that a tribe's waiver cannot be implied but must be unequivocally expressed. *American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1375 (8th Cir.1985). Waivers are strictly construed. *Seneca–Cayuga Tribe v. Oklahoma,* 874 F.2d 709, 715 (10th Cir.1989). In bankruptcy cases, filing of a proof of claim generally constitutes a waiver of sovereign immunity. *In re White,* 139 F.3d 1268, 1271 (9th Cir.1998).

In *White,* an Indian tribe filed a claim in a Chapter 11 case which was subsequently converted to Chapter 7. *Id.* at 1269. The court held the waiver continued to operate to subject the tribe to suit after conversion. It stated conversion is not the commencement of a new case for purposes of sovereign immunity. *Id.* at 1273.

 Debtor argues that the Tribe has likewise waived its immunity from suit in this case. The Tribe has filed a proof of claim, which usually constitutes a waiver of sovereign immunity in bankruptcy cases. However, it attached a Waiver Disclaimer to its claim and has persistently continued to assert its sovereign immunity. The Tribe argues its proof of claim should be treated as a special appearance filed to challenge the court's jurisdiction.

Debtor points out that in its first Chapter 11 case, the Tribe filed an Application to Modify Chapter 11 Plan of Debtor and to Modify Order of Confirmation. Debtor moved to strike for failure to state a claim and the Tribe subsequently withdrew the Application to Modify. No mention of any waiver of sovereign immunity was made in any of these filings by the Tribe.

The Court concludes the Tribe has not waived its immunity from suits in this case. The Tribe's Application to Modify in the Debtor's Chapter 11 proceeding does not express a clear waiver of the Tribe's immunity. It did not constitute a claim in that case. The subject matter of the Application was never considered by the Court. This case is not a continuation of the first Chapter 11 filing. Any waiver which might be implied from the Tribe's Application to Modify has no effect in the current Chapter 11 case.

As the Tribe requests, the Court will treat the Tribe's Proof of Claim with its attached Waiver Disclaimer as a special appearance. The Tribe has consistently maintained its immunity and has not made any clear and express waiver of that immunity. The Waiver Disclaimer prevents the Proof of Claim from being construed as a waiver of sovereign immunity.

 The filing of a Proof of Claim, however, commonly has the effect of subjecting a secured creditor's claim to treatment under a Chapter 11 Plan of Reorganization. *See In re Be–Mac Transp. Co.,* 83 F.3d 1020, 1027 (8th Cir.1996) (stating that where a secured creditor participates by filing a proof of claim, its lien may be extinguished if not preserved by a Chapter 11 plan); *In re Harnish,* 224 B.R. 91, 94 (Bankr.N.D.Iowa 1998) (applying *Be–Mac* in context of Chapter 13 plan).

 The posture of this case causes a conundrum for the Court. The Tribe asserts its sovereign immunity as a jurisdictional bar to this Court allowing Debtor to extinguish its lien through its Chapter 11 Plan. By filing the Proof of Claim, however, the Tribe appears to be "participating" in Debtor's reorganization. Having now acknowledged the Tribe's sovereign immunity, the Court concludes that continuing to maintain a Proof of Claim in this case would contradict the Tribe's assertion of immunity.

The Tribe must now make an election between withdrawing its Proof of Claim or

asserting an unqualified claim by removing the Waiver Disclaimer from the Proof of Claim as filed. Under Fed.R.Bankr.P. 3006, a creditor may withdraw a proof of claim as a matter of right unless an objection has been filed to the claim, the creditor has accepted or rejected a plan, or the creditor has otherwise significantly participated in the case. *In re Barrett Ref. Corp.*, 221 B.R. 795, 814 (Bankr.W.D.Okla. 1998) (ruling on state's request to withdraw claim). Withdrawal of a claim under Rule 3006 renders the withdrawn claim a legal nullity and leaves the parties as if the claim had never been brought. *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir.1995).

The Court concludes that the Tribe has not significantly participated in this case. The Tribe is entitled to withdraw its claim as of right under Rule 3006. The Tribe shall elect to either (1) withdraw its claim by filing a notice of withdrawal pursuant to Fed.R.Bankr.P. 3006 or (2) retract the Waiver Disclaimer from its Proof of Claim. In order to expedite proceedings, the Court directs the Tribe to make such election within 15 days of the date of this order.

## "SUIT" AGAINST THE TRIBE

Pursuant to the foregoing, the Court has determined that the Bankruptcy Code generally applies to the Tribe. Further, the Tribe's sovereign immunity from suit has not been abrogated by Congress or waived by the Tribe. The Court must next consider whether Debtor's attempt to modify the Tribe's secured claim in its Chapter 11 Plan constitutes a "suit" against the Tribe.

A thorough analysis of whether a judicial proceeding constitutes a suit against a sovereign must consider both the procedural posture and substantive nature of the proceeding. *In re NVR, LP*, 189 F.3d 442, 450 (4th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 936, 145 L.Ed.2d 815 (2000). Suits are defined by

looking to "the essential nature and effect of the proceeding." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The Supreme Court has stated:

> The general rule is that a suit is against the sovereign if "the judgment would expend itself on the public treasury or domain, or interfere with the public administration," or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act."

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (considering United States' sovereign immunity); *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 505 (8th Cir.1995) (applying definition to States' sovereign immunity).[1]

An early opinion by Chief Justice Marshall considers the question in the context of a State's immunity under the Eleventh Amendment.

> What is a suit? We understand it to be the prosecution, or pursuit, of some claim, demand, or request. In law language, it is the prosecution of some demand in a court of justice. The remedy for every species of wrong is, says Judge Blackstone, the being put in possession of that right whereof the party injured is deprived. The instruments whereby this remedy is obtained, are a diversity of suits and actions, which are defined by the Mirror to be the lawful demand of one's right.... Blackstone then proceeds to describe every species of remedy by suit; and they are all cases where the party suing claims to obtain something to which he has a right.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 407–08, 5 L.Ed. 257 (1821) (internal quotation marks omitted); *NVR, LP*, 189 F.3d at 450 (quoting *Cohens* ).

These early definitions address the substantive nature of a suit. There is

---

1. In the absence of cases on point regarding what constitutes a "suit" against Indian tribes, the Court will consider cases concerning the sovereign immunity of the United States and the Eleventh Amendment immunity of States.

also a procedural component to the definition of a "suit" against a sovereign. *NVR, LP,* 189 F.3d at 450. The procedural query considers whether the sovereign is a named defendant or served with process mandating that it appear in federal court. *Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777, 786–87 (4th Cir.1997). "[T]wo issues are important: first, the degree of coercion exercised by the federal court in compelling the [sovereign] to attend; and second, whether the resolution, or the remedy, would require [a federal court's] jurisdiction over the [sovereign]." *NVR, LP,* 189 F.3d at 452 (citations omitted).

▮▮▮ A bankruptcy case standing alone is not necessarily a "suit" against a sovereign, even though the sovereign's pecuniary interest may be inadvertently eliminated or modified. *In re Pitts,* 241 B.R. 862, 868 (Bankr.N.D.Ohio 1999). "[T]he demarcation line between those actions within a bankruptcy case that constitute a suit . . , and those actions which do not, is not always clear." *Id.* at 869. In *Pitts,* the court sets out six factors to examine in determining whether an action is a suit against a State for purposes of the Eleventh Amendment:

1) whether the proceeding is adversarial;

2) whether the proceeding arose as a result of a deprivation or injury;

3) whether there are at least two parties involved in the proceeding;

4) whether the attendance of the parties is required;

5) whether one of the parties is prosecuting a claim against the other;

6) whether the injured party is demanding the restoration of something from the defending party.

241 B.R. at 869.

The court in *Antonelli* held that a confirmation order is not a suit against one of the states. 123 F.3d at 786. "Neither the party status nor the immunity of state and local governments has any impact on the bankruptcy court's power to determine whether the terms of a reorganization plan comply with federal law." *Id.* at 787. Likewise, courts have found that sovereign immunity is not offended by granting a bankruptcy discharge, *Texas v. Walker,* 142 F.3d 813, 823 (5th Cir.1998), *cert. denied,* 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999); by valuing a secured claim to write down mortgages in Chapter 12 reorganizations, *In re Crook,* 966 F.2d 539, 543 (10th Cir.), *cert. denied,* 506 U.S. 985, 113 S.Ct. 491, 121 L.Ed.2d 430 (1992); or by interpreting the scope of the automatic stay, *In re International Heritage, Inc.,* 239 B.R. 306, 310 (Bankr.E.D.N.C. 1999).

▮▮▮ An adversary action against a sovereign is a "suit" for purposes of sovereign immunity. *Antonelli,* 123 F.3d at 786. A contested matter under Rule 9014 may be a "suit" as there are at least two parties who are opposing each other with respect to relief sought by one of them. *NVR, LP,* 189 F.3d at 452. In bankruptcy cases, a sovereign may assert immunity when a debtor asks, by motion or adversary proceeding, that a federal court dispossess that sovereign of an asset presently in its possession. *University of Virginia v. Robertson,* 243 B.R. 657, 665 (W.D.Va.2000).

▮▮▮ Generally, avoidance or invalidation of a lien requires an adversary proceeding. *In re Colortran,* 218 B.R. 507, 510 (9th Cir. BAP 1997); *In re Commercial Western Fin. Corp.,* 761 F.2d 1329, 1337 (9th Cir.1985) (finding confirmation of Chapter 11 plan with provision to avoid interest under § 544 improper under former Rule 701); *In re McKay,* 732 F.2d 44, 48 (3d Cir.1984) (refusing to confirm Chapter 13 plan including provision avoiding lien under § 522(f) under former Rule 701). Rule 7001(2) lists an action to determine the extent, priority and validity of a lien as one type of adversary proceeding. *Compare* Fed.R.Bankr.P. 3012 (providing that valuation of a secured claim may be

made by motion and may be combined with other hearings such as confirmation hearings). In *Pitts,* the court notes that avoidance of liens comports with all six factors used to determine whether an action is a suit against a sovereign. 241 B.R. at 869. "For example, a proceeding to avoid a lien clearly stems from a deprivation or injury, and upon a favorable outcome for the plaintiff, will also result in the restoration of something from the defending party." *Id.*

The Court has previously touched on the effect of the Tribe's refusal to file a proof of claim. The Tribe need not file a claim in Debtor's Chapter 11 proceeding in order to preserve its lien. *Be–Mac Transp.,* 83 F.3d at 1025. Rather, as a creditor with a loan secured by a lien on Debtor's real estate, the Tribe may ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt. *Id.* If no proof of claim relating to the lien is filed in the bankruptcy case, the lien will not be affected. *Harmon v. United States,* 101 F.3d 574, 581 (8th Cir.1996) (citing 11 U.S.C. § 506(d)(2); *Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886)). If the bankruptcy court never considers the lien, the plan cannot extinguish it. *Harmon,* 101 F.3d at 581; *Be–Mac Transp.,* 83 F.3d at 1027.

A secured creditor may be dragged into the bankruptcy involuntarily by way of the trustee or debtor filing a proof of claim on the creditor's behalf. *In re Penrod,* 50 F.3d 459, 462 (7th Cir.1995); 11 U.S.C. § 501(b), (c). The Code authorizes a debtor to file a proof of claim on the creditor's behalf in order to protect the debtor by causing the creditor's secured claims to be considered in the bankruptcy action. *In re Jones,* 122 B.R. 246, 250 (W.D.Pa.1990). A proof of claim is in the nature of a complaint. *Id.* n. 3; *Smith v. Dowden,* 47 F.3d 940, 943 (8th Cir.1995) (analogizing a creditor's claim to a civil complaint, a claim objection to an answer and an adversarial proceeding to a counterclaim).

An objection to a proof of claim initiates a contested matter, serving the purpose of putting the parties on notice that litigation is required to resolve the objection and to make a final determination on the allowance or disallowance of the claim. *In re Taylor,* 132 F.3d 256, 260 (5th Cir.1998). A reorganization plan cannot substitute for an objection to a secured claim. *Id.* at 261. Filing of a plan does not clearly place a claim in issue. *Id.*

A debtor cannot avoid the effects of sovereign immunity by filing a surrogate claim for the Tribe under § 501(c). Resort to § 501(b) and (c) cannot compel a sovereign's participation in the bankruptcy proceedings in violation of its immunity from suit. *In re Hemingway Transp., Inc.,* 993 F.2d 915, 928 (1st Cir.), *cert. denied,* 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993). A surrogate claim filed under § 501(c) should not be construed as the equivalent of a creditor consenting to bankruptcy court jurisdiction over its claim. *In re Naugatuck Dairy Ice Cream, Co.,* 106 B.R. 24, 28 (Bankr. D.Conn.1989).

As is evident from the foregoing, the Court has considered this matter from several perspectives. The Court concludes that regardless of the posture from which Debtor attempts to extinguish the Tribe's lien, whether through plan confirmation, adversary proceeding or filing a proof of claim on the Tribe's behalf, Debtor is barred by the Tribe's assertion of sovereign immunity. All of these methods of extinguishing the Tribe's lien result in a "suit against the Tribe."

The lien cannot be extinguished without coercing the Tribe into court. The tribe has refused to file a proof of claim or to participate in the reorganization. Therefore, the Chapter 11 Plan cannot affect the Tribe's lien. The Tribe has asserted its sovereign immunity from suit. Therefore, Debtor may not force the Tribe into bankruptcy court through an adversary pro-

ceeding determining the validity of the lien or through a surrogate proof of claim placing the lien into dispute.

## CONCLUSION

The Tribe is subject to the Bankruptcy Code. However, it retains its sovereign immunity from suit under the Code. Congress has not unequivocally abrogated the Tribe's immunity to suit under the Code. Nor has the Tribe made a clear and express waiver of its sovereign immunity. Regardless of how the proceeding is postured, any attempt by Debtor to extinguish the Tribe's lien on its property is a suit against the Tribe which is barred by the Tribe's sovereign immunity.

**WHEREFORE,** the Sac and Fox Tribe is protected by its sovereign immunity from Debtor's attempt to extinguish its lien.

**FURTHER,** the Court does not have jurisdiction to allow Debtor to extinguish the Tribe's lien through its Chapter 11 Plan or by any other means.

**FURTHER,** the Tribe shall elect to either (1) withdraw its claim by filing a notice of withdrawal pursuant to Fed. R.Bankr.P. 3006 or (2) assert an unqualified claim by retracting the Waiver Disclaimer from its Proof of Claim.

**FURTHER,** the Tribe shall either withdraw its claim or retract its Waiver Disclaimer on or before 15 days of the date of this order.