In re Robin Carter MAYES, also known as Robin C. Mayes, Debtor.

Robin Carter Mayes, Appellant,

v.

Cherokee Nation, Appellee.

Eastern Shoshone Tribe of the Wind River Reservation, Amicus Curiae.

BAP No. EO–02–067.
Bankruptcy No. 02–70643.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 11, 2003.

Terry D. Bigby, Tahlequah, Oklahoma, for Appellant.

Julian K. Fite and Richard D. Osburn, Tahlequah, Oklahoma, for Appellee.

Jerome L. Levine, Maita Deal Prout, and James K. Kawahara of Holland and Knight LLP, Los Angeles, California, filed an amicus curiae brief for Eastern Shoshone Tribe of the Wind River Reservation.

Before McFEELEY, Chief Judge, BOULDEN, and NUGENT, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

This appeal presents a question of tribal sovereign immunity to certain proceedings in bankruptcy. The debtor Robin Carter Mayes ("Appellant") appeals from the bankruptcy court's Order denying his Motion to Avoid Judicial Lien and granting the Cherokee Nation's ("Appellee") Motion to Dismiss Debtor's Motion to Avoid Judicial Lien on the ground that Appellee was immune from suit. The issue presented is whether a motion to avoid an Indian nation's judicial lien pursuant to 11 U.S.C.

§ 522(f)(1)(A)[1] constitutes a "suit," and is thereby subject to the common law doctrine of tribal sovereign immunity. We conclude that in bankruptcy, a motion to avoid a lien is a "suit," and that in the absence of an "unequivocal waiver" of immunity, an Indian nation is immune from suit under common law tribal immunity. We AFFIRM the bankruptcy court.

### Appellate Jurisdiction

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The Appellant timely filed his notice of appeal, and the parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the Eastern District of Oklahoma.[2]

The Order is a final, appealable order under 28 U.S.C. § 158(a)(1) because it conclusively determines and disposes of Appellant's Motion to Avoid Judicial Lien and Appellee's Motion to Dismiss.[3]

### Standard of Review

■ The application of tribal sovereign immunity is a question of law subject to *de novo* review by this Court.[4]

### Factual Background

The facts in this appeal are undisputed. In October 2001, the Appellee obtained a judgment against Appellant in the amount of $4,417.82.[5] Thereafter, Appellee recorded its judgment, and in accordance with Oklahoma law, the judgment became a lien upon Appellant's real property—his homestead.

In February 2002, the Appellant filed his Chapter 7 bankruptcy petition. Appellant claimed the real property exempt as his homestead.[6] On March 28, 2002, Appellant filed a Motion to Avoid Judicial Lien ("Avoidance Motion"), seeking to avoid the Appellee's judgment lien on his exempt homestead.[7] Appellant served his Avoidance Motion on Appellee by regular mail, addressed to Cherokee Nation at a post office box.[8] Nothing in the record

---

1. Unless otherwise noted, all future statutory references herein are to title 11 of the United States Code.

2. *See* 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8002.

3. *See In re Fox,* 241 B.R. 224, 228 (10th Cir. BAP 1999) (citing *Cascade Energy & Metals Corp. v. Banks (In re Cascade Energy & Metals Corp.),* 956 F.2d 935, 938–39 (10th Cir.1992)) (final order includes those that conclusively determine "discrete disputes" within a bankruptcy case); *see also Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (order is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment); *Bank of Okla. v. Muscogee (Creek) Nation,* 972 F.2d 1166, 1168–69 (10th Cir.1992) (order granting Indian nation's motion to dismiss based on sovereign immunity is a final order).

4. *E.F.W. v. St. Stephen's Indian High School,* 264 F.3d 1297, 1302–03 (10th Cir.2001) (tribal sovereign immunity is matter of subject matter jurisdiction to which *de novo* review is

applied); *Fletcher v. United States,* 116 F.3d 1315, 1323–24 (10th Cir.1997) (*de novo* review of sovereign immunity issue); *Muscogee (Creek) Nation,* 972 F.2d at 1168–69 (10th Cir.1992) (*de novo* review of order granting motion to dismiss interpleader action on grounds of sovereign immunity); *Straight v. Wyoming Dep't of Transp. (In re Straight),* 248 B.R. 403, 409 (10th Cir. BAP 2000) (*de novo* review of sovereign immunity issue).

5. This money judgment was in addition to other relief granted against Appellant.

6. Although the Appellant has not included a copy of Schedule C in his appendix, the Appellant represented in his Motion to Avoid Judicial Lien that his real property was claimed exempt as his homestead.

7. *See* 11 U.S.C. § 522(f)(1)(A).

8. Appellant's service of the Avoidance Motion did not comply with Fed. R. Bankr.P. 9014(b) and 7004(b)(3). No individual was named as an agent for service of process for the Appel-

suggests that prior to receiving the Avoidance Motion, Appellee had filed a proof of claim or otherwise participated in the Appellant's bankruptcy case in any way. In response to the Avoidance Motion, the Appellee filed a Special Entry of Appearance and Motion to Dismiss Debtor's Motion to Avoid Judicial Lien ("Dismissal Motion"), asserting sovereign immunity.

The bankruptcy court set a briefing schedule on the Appellee's Dismissal Motion, and the parties thereafter submitted briefs. The Appellant asserted two objections to the Dismissal Motion: (1) his Avoidance Motion was not a "suit" against Appellee and therefore sovereign immunity was inapplicable; and (2) even if the Avoidance Motion was a "suit," Congress abrogated the Appellee's sovereign immunity by its enactment of § 106(a).

After taking the matter under advisement, the bankruptcy court entered its Order on August 21, 2002, granting the Dismissal Motion and denying the Appellant's Avoidance Motion. The bankruptcy court concluded that the Avoidance Motion was a suit for purposes of sovereign immunity [9] and, relying on our prior decision in *Straight v. Wyoming Department of Transportation (In re Straight)*, that Section 106(a) is an unconstitutional abrogation of sovereign immunity.

This appeal followed. On appeal, Appellant asserts as the sole error the bankruptcy court's conclusion that his Avoidance Motion was a "suit" for purposes of sovereign immunity. Because Appellant does not challenge the bankruptcy court's conclusion that § 106(a) is an unconstitutional abrogation of sovereign immunity, the Appellant is deemed to have abandoned this argument.[10]

lee. But, this issue has not been raised and, given the disposition of this case, need not be addressed.

9. The bankruptcy court erroneously referred to the Appellee's sovereign immunity as deriving from the Eleventh Amendment. Tribal sovereign immunity is a matter of common law, not the Eleventh Amendment. Technically speaking, the immunity that States and Indian tribes enjoy is not identical. *See infra* at 149–50. However, this Court finds persuasive case law defining the parameters of States' sovereign immunity and interpreting the term "suit" under the Eleventh Amendment.

10. Having failed to raise and brief the § 106 issue in his opening brief, the Appellant has abandoned this argument, and the Court will not consider or address it. *Dry v. United States*, 235 F.3d 1249, 1252 (10th Cir.2000); *Coleman v. B–G Maint. Mgmt.*, 108 F.3d 1199, 1205 (10th Cir.1997); *Artes–Roy v. City of Aspen*, 31 F.3d 958, 960 n. 1 (10th Cir.1994).

But, we note that even if § 106(a) is a constitutional abrogation of sovereign immunity, *contra Straight*, 248 B.R. at 406, it probably does not apply to the Appellee, an Indian nation. That section expressly states that it

applies to abrogate the sovereign immunity of "governmental units." 11 U.S.C. § 106(a). The phrase "governmental units"—

> means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or *domestic government[.]*

11 U.S.C. § 101(27) (emphasis added). Section 101(27) does not refer to Indian nations or tribes. The only portion of that section that could be said to apply to an Indian nation or tribe is its reference to a "domestic government." While several bankruptcy courts have either expressly or impliedly held that Indian nations or tribes are "domestic governments" to which §§ 101(27) and 106 apply, *see Warfield v. Navajo Nation (In re Davis Chevrolet, Inc.)*, 282 B.R. 674, 678 n. 2 (Bankr.D.Ariz.2002); *Turning Stone Casino v. Vianese (In re Vianese)*, 195 B.R. 572, 575–76 (Bankr.N.D.N.Y.1995); *In re Sandmar Corp.* 12 B.R. 910, 916 (Bankr.D.N.M.1981), we conclude that they probably are not. Accordingly, § 106(a) likely could not abrogate Appellee's immunity even if it were constitution-

While this appeal was pending, this Court issued an order requesting supplemental briefing on the question of whether the Appellee had waived sovereign immunity by initiating the state court lawsuit that gave rise to its judgment and judgment lien. Both Appellant and Appellee submitted supplemental memoranda on this point.

*Analysis*

The bankruptcy court held that the Avoidance Motion was a "suit" barred under sovereign immunity arising under the Eleventh Amendment. While, for the reasons stated herein, we agree with this conclusion, we think it is necessary to first clarify that Appellee's immunity arises not under the Eleventh Amendment, but rather under federal common law. Common law tribal immunity, however, applies the same requirement of the existence of a "suit," and for the reasons discussed, we agree with the bankruptcy court that Appellant's Avoidance Motion is a "suit" from which Appellee is immune. These issues are discussed below.

*Tribal Sovereign Immunity*

The doctrine of tribal immunity developed under federal common law and is similar, but not identical, to the sovereign immunity of States as preserved by the Eleventh Amendment. Tribal immunity is described in *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering*:[11]

> The common law sovereign immunity possessed by the Tribe is a necessary corollary to Indian sovereignty and self-governance. *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Of course, because of the peculiar "quasi-sovereign" status of the Indian tribes, the Tribe's immunity is not congruent with that which the Federal Government, or the States, enjoy. And this aspect of tribal sovereignty, like all others, is subject to plenary federal control and definition. *See Santa Clara Pueblo v. Martinez, supra,* 436 U.S., at 58, 98 S.Ct., at 1677. Nonetheless, in the absence of federal authorization, tribal immunity, like all aspects of tribal sovereignty, is privileged from diminution by the States.[12]

The Supreme Court drew a further distinction between state sovereign immunity and tribal sovereign immunity in *Kiowa Tribe v. Manufacturing Technologies, Inc.:*[13]

> We have often noted, however, that the immunity possessed by Indian tribes is not coextensive with that of the States.... [W]e distinguished state sovereign immunity from tribal sovereign immunity, as tribes were not at the Constitutional Convention. They were thus not parties to the "mutuality of ... concession" that "makes the States' surrender of immunity from suit by sister States plausible." So tribal immunity is a matter of federal law....[14]

Although the Supreme Court has distinguished between tribal and state sovereign immunity, it has long recognized that Indi-

---

al. *See In re National Cattle Congress*, 247 B.R. 259, 266–67 (Bankr.N.D.Iowa 2000). Our conclusion comports with the general proposition that Congress must make its intent to abrogate an Indian nation's immunity clear and unequivocal, and actions against tribes cannot merely be implied. *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

**11.** 476 U.S. 877, 890–91, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986).

**12.** *Id.* (citations omitted).

**13.** 523 U.S. 751, 755–56, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

**14.** *Id.* (citations omitted).

an tribal immunity is similar in scope to that enjoyed by the states.[15] For this reason, we find the case law defining and interpreting "suit" as contained in the Eleventh Amendment [16] instructive and persuasive in the context of matters against Indian tribes in bankruptcy.[17]

*The Avoidance Motion is a "Suit" Barred by Tribal Sovereign Immunity*

■ Before deciding whether a lien avoidance application is a "suit" for immunity purposes, we consider the nature of a lien avoidance action in bankruptcy. Ordinarily, prepetition liens pass through a bankruptcy case unaffected.[18] In the absence of a lien avoidance action, a secured creditor may look to the property securing the claim for satisfaction of its prepetition lien, but may not look to the debtor personally for payment.[19] Moreover, liens that are not avoided may be enforced against exempt property.[20] Thus, absent lien avoidance, a judgment lien creditor may look to exempt property to satisfy its judgment lien. A successful lien avoidance action effectively divests a creditor of its

lien to the extent that it impairs an exemption.

■ Here, the Appellant's Avoidance Motion is brought pursuant to § 522(f)(1), which provides in pertinent part:

Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(A) a judicial lien.... [21]

Under the Bankruptcy Code, a lien avoidance application brought pursuant to § 522(f) is a "contested matter" and not an adversary proceeding.[22] Unlike an adversary proceeding, a contested matter is initiated by filing a motion rather than a complaint.[23] While no summons is issued and served upon the "defendant" in a contested matter, service of a pleading initiating a contested matter is made in the same manner as service of a summons and complaint in an adversary proceeding.[24]

**15.** *Three Affiliated Tribes*, 476 U.S. at 890–91, 106 S.Ct. 2305 (citing *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670); *see Kiowa Tribe*, 523 U.S. at 754, 118 S.Ct. 1700 ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.").

**16.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

**17.** *Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *National Cattle Congress*, 247 B.R. at 269 n. 1.

**18.** *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

**19.** *See* 11 U.S.C. § 524(a)(1).

**20.** *Id.* at § 522(c)(2); *Farrey*, 500 U.S. at 297–98, 111 S.Ct. 1825.

**21.** 11 U.S.C. § 522(f)(1).

**22.** *See* Fed. R. Bankr.P. 4003(d) and 7001(2). All other actions that seek to avoid a lien are adversary proceedings. *Cf.* 11 U.S.C. §§ 544–545, 547–548, 553; Fed. R. Bank. P. 7001(2).

**23.** *Compare* Fed. R. Bankr.P. 7001 and 7003 (requiring the filing of a complaint to commence an adversary proceeding) *with* Fed. R. Bankr.P. 9014 (relief in a contested matter is requested by motion).

**24.** Fed. R. Bankr.P. 9014(b). Proper service of a contested matter requires that an individual be named as an agent for service of process for the Cherokee Nation. *See* Fed. R. Bankr.P. 7004(b)(3). Appellant failed to do this here.

The different procedural treatment of § 522(f) lien avoidance actions (contested matters) from all other lien avoidance actions (adversary proceedings) is explained by one bankruptcy commentator as follows:

> Rule 4003(d) is a recognition that in the vast majority of cases brought under section 522(f) the proceeding is not contested, and that even if there is a contest, the issue usually a relatively simple question of valuation. The rule thus distinguishes these proceedings from the exercise of the avoiding powers under Code sections 544–553 and 724(a), by either the trustee or the debtor. The exercise of those powers, which is more likely to raise issues about whether the nature of the transfer renders it avoidable, must be through an adversary proceeding.[25]

In this case, we are asked to decide whether the Avoidance Motion is a contested matter that amounts to being a "suit" to which tribal immunity applies. The Tenth Circuit has not decided this precise question, and this Court has cautioned that not all legal actions are suits for purposes of sovereign immunity.[26]

On two occasions, this Court has held that an adversary proceeding against a state is a suit for purposes of the Eleventh Amendment sovereign immunity. In *Chandler v. State of Oklahoma (In re Chandler)*[27] the debtor brought a § 523(a) dischargeability action against the State of Oklahoma seeking a determination that a tax debt was dischargeable. In concluding that the adversary proceeding was a suit and subject to the state's sovereign immunity, this Court noted that monetary relief need not be sought.[28] Citing to numerous cases from other jurisdictions, this Court also observed that in bankruptcy, the "overwhelming view" is that an adversary proceeding is a suit for Eleventh Amendment purposes, regardless of whether the plaintiff is seeking monetary relief.[29] The reasoning was explained by this Court as follows:

> The rationale behind the "adversary proceeding" rule is twofold. First, the commencement of an adversary proceeding naming a State as a defendant results in the issuance of a summons against the State thereby subjecting it to the "indignity" of a required appearance in a judicial tribunal. Second, the commencement of an adversary proceeding against a State entails the bankruptcy court's exercise of *in personam* jurisdiction over the State, and the resolution of the proceeding results in a decision that is specifically binding on the State.[30]

In *Straight*,[31] the debtor brought an adversary proceeding seeking lost profits against the Wyoming Department of Transportation for revoking debtor's disadvantaged business enterprise certification in violation of §§ 362(a) and 525(a). Although *Straight* dealt primarily with the constitutionality of § 106(a) to abrogate a state's sovereign immunity, this Court also concluded that debtor's adversary proceed-

---

25. 9 *Collier on Bankruptcy* ¶ 4003.05 (15th ed. rev.2002) (footnotes omitted). *See In re Coats*, 232 B.R. 209, 214 (10th Cir. BAP 1999) (lien avoidance under § 522(f)(1)(A) is strictly a matter of applying the formula set forth in § 522(f)(2)).

26. *Chandler v. State of Oklahoma (In re Chandler)*, 251 B.R. 872, 875 (10th Cir. BAP 2000).

27. *Id.*

28. *Id.* (citing *Seminole Tribe of Florida*, 517 U.S. at 54, 116 S.Ct. 1114).

29. *Id.*

30. *Id.* at 876.

31. 248 B.R. at 406.

ing was a suit against the state within the meaning of the Eleventh Amendment.[32]

Seizing upon dicta in *Chandler* as well as the form of his Avoidance Motion, the Appellant argues that his Avoidance Motion is not a suit. Specifically, he points out that he has not commenced an adversary proceeding, he has not caused a summons to be issued and served compelling the Appellee to appear, he has not asked for monetary relief but rather has sought declaratory relief, and he does not seek to dispossess the Appellee of an asset. Appellant cites to *Chandler* where this Court said:

> [W]e note that had the relief sought in the Dischargeability Action been brought by motion, such as a motion to clarify or enforce a discharge order, as opposed to a § 523(a) adversary proceeding, the same result may not have ensued. Although the issue is not squarely before us, existing law indicates that if a monetary recovery or *dispossession of assets from a State* are not sought in a contested matter, a suit does not exist and, therefore, the Eleventh Amendment does not apply.[33]

■ We are not persuaded, however, that the form the action takes controls whether it is a suit for immunity purposes. Were we to look only to the procedure or form of the pleading, we would be constrained to reach the anomalous result that *all* lien avoidance actions, save those brought under § 522(f), would be deemed to be suits simply because they are brought as adversary proceedings rather than contested matters.[34] Accordingly, we cannot mechanically conclude that contested matters are not suits.[35] Rather, the Court must look beyond the procedure and form an action takes, and examine its substance to determine whether it is a suit and sovereign immunity applies.[36]

■ Circuit authority is sparse as to whether a contested matter, generally, or a § 522(f) lien avoidance motion, in particular, qualifies as a suit for sovereign immunity purposes. The Fourth Circuit Court of Appeals in *In re NVR, LP*,[37] has concluded that a contested matter by a debtor seeking a declaration that it was exempt from taxes under § 1146 and a return of allegedly exempt tax payments is a suit for sovereign immunity purposes. No circuit court has directly addressed whether a § 522(f) lien avoidance motion is a suit,[38] but the analysis of the contested matter in *NVR* is instructive:

---

**32.** *Id.* at 409 n. 4.

**33.** 251 B.R. at 876 (footnote omitted) (emphasis added).

**34.** Fed. R. Bankr.P. 7001(2) and 4003(d).

**35.** *See University of Va. v. Robertson*, 243 B.R. 657, 665 (W.D.Va.2000), where in the setting of an adversary proceeding involving a determination of a § 523(a)(8) hardship discharge of a student loan, the district court stated: "The decision before me means that a state may assert sovereign immunity when a debtor asks, *by motion or adversary proceeding,* that a federal court dispossess that state of an asset presently in its possession."

**36.** *See NVR Homes, Inc. v. Clerks of the Circuit Courts (In re NVR, LP)*, 189 F.3d 442, 452

(4th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 815 (2000) (a thorough analysis of whether a judicial proceeding constitutes a suit must consider both the procedural posture and substantive nature of the proceeding); *National Cattle Congress*, 247 B.R. at 269 (for sovereign immunity purposes, suits are defined by looking to the essential nature and effect of the proceeding); *Pitts v. Ohio Dep't of Taxation (In re Pitts)*, 241 B.R. 862, 869 (Bankr.N.D.Ohio 1999) (applying a six part test to determine whether a proceeding is a suit).

**37.** 189 F.3d at 452.

**38.** At least two bankruptcy courts have applied sovereign immunity in a § 522(f) lien avoidance setting, assuming that such a lien

[T]his action was initiated as a motion under Rule 9014 of the Federal Rules of Bankruptcy Procedure. Rule 9014 is entitled "Contested Matters" and as commentators have noted, it is unlike an administrative matter in bankruptcy because "there are (at least) two parties who are opposing each other with respect to relief sought by one of them. The motion thus set NVR's interests at odds with the states"....

The ultimate resolution of the dispute between NVR and the states does require, however, that the federal courts exercise jurisdiction over the states. The states persuasively framed this issue by noting that if the federal court action could not result in ordering the states to return the tax payments, then any opinion issued would be advisory and improper. It is apparent, however, that absent the ability of the bankruptcy court to exercise jurisdiction over the states and compel the turnover of the tax payments, no remedy effectively could be granted. This case is indeed one in which "adjudication ... depend[s] on the court's jurisdiction over the state." *Antonelli*, 123 F.3d at 787. This finding alone is enough to determine that the action, if it is to meet the requirements of Article III, is a suit against the states.

....

In sum, despite the fact that neither Maryland nor Pennsylvania suffered the indignity of being summonsed to appear in a federal court, we determine that they are immune from the prosecution of NVR's Rule 9014 motion. The motion initiated a "contested matter" pitting Maryland and Pennsylvania against NVR.... The "suit" clearly sought a determination that the states owed NVR money—repayment of exempt transfer and recordation taxes....[39]

In a matter similar to this case, the debtor in *In re National Cattle Congress*[40] sought to extinguish a tribe's mortgage lien. In that case, the debtor filed neither an adversary proceeding nor a contested matter motion, but proposed through a Chapter 11 plan to extinguish the mortgage lien. The tribe argued that sovereign immunity barred the bankruptcy court from altering its lien on debtor's property through the plan confirmation process. The bankruptcy court, after looking at the substance of the proceeding, concluded that this was a suit and tribal immunity applied.

"The general rule is that a suit is against the sovereign if 'the judgment would expend itself on the public treasury or domain, or interfere with the public administration,' *or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'*"

....

---

avoidance action is a suit. In *In re Christie*, 222 B.R. 64 (Bankr.D.N.J.1998), the bankruptcy court, on a motion for reconsideration, vacated its previous order avoiding a state's judicial lien for lack of jurisdiction, holding that the order was entered in violation of the state's sovereign immunity. The bankruptcy court assumed, without discussion, that the debtor's § 522(f) motion was a "suit" and subject to the Eleventh Amendment. *Id.* at 69. In *Pitts*, 241 B.R. at 868–69, the debtor brought an adversary complaint to discharge

a tax debt *and* to avoid the lien created thereby under § 522(f). In applying sovereign immunity, the bankruptcy court did not mention the fact that the debtor brought its § 522(f) lien avoidance by an adversary proceeding rather than as a contested matter under Fed. R. Bankr.P. 4003(d) and 9014.

**39.** 189 F.3d at 452–54 (citations omitted).

**40.** 247 B.R. at 263–64.

... The Court concludes that regardless of the posture from which Debtor attempts to extinguish the Tribe's lien, whether through plan confirmation, adversary proceeding or filing a proof of claim on the Tribe's behalf, Debtor is barred by the Tribe's assertion of sovereign immunity. All of these methods of extinguishing the Tribe's lien result in a "suit against the Tribe."[41]

Similarly, in the case at bar, a successful lien avoidance by Appellant has the effect of preventing or "restraining" the tribe from enforcing its judicial lien against Appellant's property.

In *In re Pitts*[42] the debtor filed an adversary proceeding against Ohio taxing authorities seeking to determine the dischargeability of certain tax debts under § 523 *and* avoidance of the liens created thereby under § 522(f). The bankruptcy court made no mention of the fact that the lien avoidance was brought as an adversary proceeding, rather than as a contested matter as required under Fed. R. Bankr.P. 4003(d). In deciding that Ohio was immune from the action, the bankruptcy court applied a six factor test to the substance of the action.

> [T]he substance of the underlying action must be examined to determine if an action is a suit for purposes of the Eleventh Amendment. In making this determination, this Court, ... will take into consideration the following six factors:
>
> 1) whether the proceeding is adversarial;
>
> 2) whether the proceeding arose as a result of a deprivation or injury;

> 3) whether there are at least two parties involved in the proceeding;
>
> 4) whether the attendance of the parties is required;
>
> 5) whether one of the parties is prosecuting a claim against the other;
>
> 6) whether the injured party is demanding the restoration of something from the defending party.[43]

The court did not hesitate to conclude that the lien avoidance portion of the debtor's complaint was a "suit" and sovereign immunity applied, stating:

> Applying these factors to the instant case, it is clear that the portion of the Plaintiff's Complaint relating to the avoidance of the Defendant's liens comports with all of the above factors. For example, a proceeding to avoid a lien clearly stems from a deprivation or injury, and upon a favorable outcome for the plaintiff, will also result in the restoration of something from the defending party.[44]

As noted by the *amicus* party here, at least four, and arguably five, of the six *Pitts* factors are present in the instant case. While Appellant's Avoidance Motion is not an adversary proceeding *per se,* it is nonetheless adversarial in nature, pitting Appellant-debtor against Appellee-tribe, and seeking to restore his exempt property free of the tribe's judicial lien.

▇ The Appellant argues that the Avoidance Motion is not a suit because he does not seek monetary relief against the Appellee nor seek to divest Appellee of an asset. He maintains that his Avoidance Motion merely seeks declaratory relief and therefore sovereign immunity does not ap-

---

**41.** *Id.* at 269–71 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) (emphasis added).

**42.** 241 B.R. at 868–69.

**43.** *Id.* at 869.

**44.** *Id.*

ply. Appellant's "form of relief" argument is without merit. *Seminole Tribe v. Florida*[45] makes clear that the nature of the relief sought is irrelevant to the question whether the suit is barred by sovereign immunity.[46]

The Court also disagrees with Appellant's contention that his Avoidance Motion does not seek to dispossess the Appellee of an asset. Appellant argues that the judicial lien is not an "asset," but is merely a "method of enforcement of a debt." Numerous courts, however, hold that a judicial lien is a property interest.[47] This Court therefore concludes that an attempt to avoid a judicial lien is an action to extinguish the lien or divest the holder of its lien and is tantamount to dispossessing Appellee of a property interest.

The Appellant also urges this Court to adopt an *in rem* exception to sovereign immunity. He essentially asserts that the bankruptcy court's *in rem* jurisdiction over a debtor's property trumps Appellee's immunity. The Appellant cites no authority to this Court that recognizes such an *in rem* exception to sovereign immunity in the context of a bankruptcy case.[48] This argument appears to be nothing more than a variation of Appellant's "form of relief" argument premised upon the notion that the type of recovery sought matters and has been rejected by *Seminole Tribe*, as previously noted.

The Appellant confuses bankruptcy cases that affect all of the creditors alike because of the bankruptcy court's *in rem* jurisdiction with bankruptcy proceedings affecting only a specific creditor.[49] Courts must examine the substance of the particular bankruptcy matter in question to determine whether it affects all of the debtor's creditors or only a specific creditor.[50] The latter is much more akin to the exercise of personal jurisdiction over the creditor and constitutes a suit.

---

**45.** 517 U.S. at 58, 116 S.Ct. 1114.

**46.** *Accord Chandler,* 251 B.R. at 875 (quoting *Seminole Tribe* and recognizing that monetary recovery against a state is not required for an action to be a suit; sovereign immunity also serves to avoid a state being subjected to the "coercive process of judicial tribunals at the instance of private parties.").

**47.** *See United States v. Sec. Indus. Bank,* 459 U.S. 70, 74–75, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (§ 522(f) involves the taking of a property interest); *Verba v. Ohio Cas. Ins. Co.,* 851 F.2d 811, 817 (6th Cir.1988) (A "judicial lien constitutes a property interest entitled to the protections of the due process clause" of the Constitution); *In re Rivera,* 256 B.R. 828, 833 (Bankr.M.D.Fla.2000) ("A judgment lien is a right affecting a property interest and therefore a judgment lien is a property interest itself").

**48.** The existence of such an *in rem* exception is doubtful. *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 38, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *In re Greene,* 980 F.2d 590, 598 (9th Cir.1992) (Bankruptcy court jurisdiction over property of estate and adversary proceedings does not operate to pierce tribe's immunity from suit); *French v. Ga. Dep't of Revenue (In re ABEPP Acquisition Corp.),* 215 B.R. 513, 517 (6th Cir. BAP 1997).

**49.** *See NVR,* 189 F.3d at 451 (jurisdiction over the dischargeability of debt and confirmation of a plan of reorganization derives from jurisdiction over debtors and their estates, not from jurisdiction over the state or other creditors); *Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777, 786–87 (4th Cir. 1997) (determination of whether reorganization plan complied with federal law was not a suit; when defining the rights and disposition of the estate, it collaterally affects the rights of virtually every party related to the estate— even if one happens to be a state).

**50.** "The substantive consideration focuses upon whether the action was, as stated by Chief Justice Marshall, 'the prosecution of some demand in a Court of justice,' as opposed to the orderly disposition of an estate, with the states' role limited to that of any other creditor." *NVR,* 189 F.3d at 452.

■ In addition, if a bankruptcy court's *in rem* jurisdiction over a debtor's property always prevailed over sovereign immunity, Appellant's so-called *in rem* exception would swallow the rule. There would be *no* bankruptcy case or proceeding where sovereign immunity would apply. Yet there are numerous actions and proceedings in bankruptcy, apart from adversary proceedings, where sovereign immunity is recognized and applied. Finally, the broad jurisdictional grant under 28 U.S.C. § 1334(e) over all of a debtor's property and property of the estate does not automatically preclude the assertion of a sovereign immunity defense. In *Blatchford v. Native Village of Noatak*, the Supreme Court noted the distinction: "The fact that Congress grants *jurisdiction* to hear a claim does not suffice to show Congress has abrogated all *defenses* to that claim. The issues are wholly distinct."[51]

Based upon the reasoning set forth above, this Court concludes that the bankruptcy court did not err in determining that the Avoidance Motion was a suit for purposes of sovereign immunity.

### The Appellee Has Not Waived Its Tribal Immunity

■ We now address the remaining issue of waiver raised by this Court during the pendency of the appeal. The Appellant contends that the Appellee waived its tribal immunity by commencement of the state court action that gave rise to its judicial lien. The Appellant's argument is one of implied waiver and is based solely upon the Appellee's previous litigation conduct in the Oklahoma *state* court.

The Appellant relies upon *Lapides v. Board of Regents of the University System*.[52] That case is readily distinguishable and inapposite. In *Lapides*, the state entity was sued in Georgia state court. The state entity affirmatively removed the case to federal court where it then asserted sovereign immunity. The Supreme Court held that the removal of the case from state court to federal court constituted a waiver of sovereign immunity in federal court.

■ In the instant case, the Appellee engaged in no affirmative conduct in the Appellant's federal bankruptcy case. The Appellee's waiver of immunity in Oklahoma state court occurred at a time when Appellant's bankruptcy case did not even exist. A tribe's waiver of its immunity must be clear and unequivocal.[53] Ordinarily, a waiver of immunity in state court does not waive immunity in federal court.[54] The Tenth Circuit has recently held, in the context of a State's waiver of sovereign immunity, that there must be " 'an unequivocal waiver specifically applicable to federal-court jurisdiction.' "[55] Based upon the law of waiver of sovereign immunity, the Appellee's commencement of the state court action against Appellant and waiver of immunity in Oklahoma *state* court, with-

**51.** 501 U.S. 775, 786 n. 4, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991).

**52.** 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

**53.** *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001); *In re White*, 139 F.3d 1268, 1271 (9th Cir.1998).

**54.** *Big Horn County Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 955 (9th Cir.2000); *In re White*, 139 F.3d at 1272 (citing general rule that a tribe's waiver of sovereign immunity is only valid in particular proceeding in which waiver is knowingly and expressly given); *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 539 (10th Cir.1987) (Tribe's initiation of litigation does not necessarily establish waiver with respect to related matters.).

**55.** *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1203 (10th Cir.2002) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)).

out any affirmative action in the bankruptcy case, constitutes neither a "clear" nor an "unequivocal" waiver of its tribal immunity in federal bankruptcy court.[56]

### Conclusion

The Court today holds that a § 522(f) lien avoidance brought as a contested matter under Fed. R. Bankr.P. 9014 constitutes a suit and, in the absence of an unequivocal waiver of immunity in federal bankruptcy court, is subject to tribal immunity. The bankruptcy court's Order granting the Appellee's Motion to Dismiss and denying the Appellant's Motion to Avoid Judicial Lien is AFFIRMED.

MCFEELEY, Chief Judge, Dissenting.

I respectfully dissent. While I agree with the majority that a lien avoidance proceeding under 11 U.S.C. § 522(f)[1] is a suit that implicates sovereign immunity, I disagree with the majority on the issue of whether § 106(a) abrogates the sovereign immunity of an Indian tribe in a bankruptcy proceeding. I believe that, as manifest in the language of the statute and the maxims of statutory construction, as well as the policies that guide the Bankruptcy Code and underlie the Constitution, Congress intended to abrogate the sovereign immunity of Indian tribes and legitimately did so in § 106(a).

As a preliminary matter I observe that I disagree with the majority's statement that the Appellant waived the issue of whether 106(a) abrogated the sovereign immunity of the Cherokee Nation by not raising it in his briefs. The Appellant's appeal is focused on whether an Indian tribe can claim sovereign immunity in a § 522(f) proceeding. His argument is constructed as follows: (1) bankruptcy courts have jurisdiction over lien avoidance proceedings under § 522(f); (2) lien avoidance proceedings are not suits; (3) sovereign immunity is not implicated in proceedings that are not suits; therefore, (4) sovereign immunity is not implicated in a § 522(f) proceeding. Whether a lien avoidance procedure is a suit for sovereign immunity purposes necessitates an exploration of what constitutes a suit under the sovereign immunity doctrine and concurrently, the parameters of that doctrine.[2] It is an issue that is reviewed de novo.[3] In this case, we have the obligation to consider whether the sovereign immunity of an Indian tribe has been abrogated with respect to individual bankruptcy proceedings before we consider whether a lien avoidance action brought pursuant to § 522(f) is a suit under the sovereign immunity doctrine.

"An Indian Tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."[4] I agree with the majority's conclusion that the Cherokee Nation did not waive its sovereign immunity in these proceedings. However, I disagree with the majority's determination that Congress did not explicitly abrogate the sovereign immunity of Indian tribes in § 106(a). The test for abrogation of an Indian tribe's sovereign immunity is the same as the test applied to

---

**56.** *See White,* 139 F.3d at 1271–72.

**1.** Future statutory references are to Title 11 of the United States Code unless otherwise noted.

**2.** *See Osage Tribal Council v. United States Dep't of Labor,* 187 F.3d 1174, 1180 n. 1 (10th Cir.1999) (stating "[t]he issue of whether immunity is validly asserted arguably precedes the issue of whether Congress has abrogated immunity.").

**3.** *Nelson v. La Crosse County Dist. Atty (In re Nelson),* 301 F.3d 820, 825 (7th Cir.2002).

**4.** *Kiowa Tribe v. Manufacturing Tech.,* 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

the States:[5] 1) the abrogation must be explicit; and 2) Congress must have the power to do so.[6]

The Supreme Court has held that any abrogation of an Indian tribe's sovereign immunity must be clear and unequivocal.[7] There is little case law delineating what constitutes a clear and unequivocal abrogation of sovereign immunity.[8] Some cases in this circuit hinge on whether the phrase "Indian tribe" is used in the examined legislation for determining whether the sovereign immunity of the tribe has been waived.[9] Other cases have not required that same specificity.[10]

Some courts have inferred from this case law that a Congressional waiver of Indian sovereign immunity occurs only when the phrase "Indian tribe" is somewhere within the statute at issue.[11] Be-

cause the Bankruptcy Code never specifically mentions "Indian tribes" in § 106(a) or in the corresponding definition statute § 101(27), the majority concludes that Congress did not mean to abrogate the sovereign immunity of Indian tribes. In reaching its conclusion, the majority fails to take into consideration statutory maxims of construction as well as the historical status of Indian tribes in this country.

Section 101(27) defines "governmental unit", and so delineates the parameters of the abrogation established by Congress in § 106(a). At the end of the statute, following a semicolon, is the phrase "or other foreign and domestic government[s.]"[12] Some courts have found that this phrase is applicable to "Indian tribes."[13] I agree.

The word "domestic" means "pertaining, belonging, or relating to a home, a domi-

---

5. In *Seminole Tribe v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court stated that a statute attempting to abrogate the States' sovereign immunity will pass constitutional muster only if Congress has unequivocally expressed its intent to abrogate the immunity and if Congress has acted pursuant to a valid exercise of power.

6. *Kiowa Tribe*, 523 U.S. at 754, 118 S.Ct. 1700.

7. *Id.* at 759, 118 S.Ct. 1700; *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

8. *Osage*, 187 F.3d at 1181.

9. *See, e.g., id.* at 1182 (finding that Congress waived tribal sovereign immunity from suit under the whistle blower provision of Safe Drinking Water Act when, in establishing a uniform national scheme of regulation of the universal subject of drinking water, it granted agency jurisdiction over all "persons," defined "persons" to include "municipality," and defined "municipality" to include "Indian tribes.").

10. *See Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1339 n. 11 (10th Cir.1982) (finding that tribal sovereign immunity did not pre-

clude the application of laches and similar defenses to the tribe's National Environmental Policy Act claims on the grounds that the concerns addressed by NEPA do not relate to the rights of Indians per se, but instead advance substantive goals for the nation as a whole by "essentially *procedural*" requirements).

11. *In re National Cattle Congress*, 247 B.R. 259, 267 (Bankr.N.D.Iowa 2000).

12. 11 U.S.C. § 101(27).

13. *Turning Stone Casino v. Vianese (In re Vianese)*, 195 B.R. 572, 576 (Bankr.N.D.N.Y. 1995); *In re Sandmar Corp.*, 12 B.R. 910, 916 (Bankr.D.N.M.1981) (finding that an Indian tribe was a governmental unit under the § 101 definition in effect). *See also In re Greene*, 980 F.2d 590, 597–98 (9th Cir.1992) (assuming without deciding that Indian tribes were governmental units for the purposes of the version of § 106 then in effect); *Warfield v. Navajo Nation (In re Davis Chevrolet, Inc.)*, 282 B.R. 674, 683 n. 5 (Bankr.D.Ariz.2002) (stating in a footnote that "[i]t seems to this court that 'other domestic government' is broad enough to encompass Indian tribes.")

cile, or to the place of birth, origin, creation or transaction."[14]   A government is "that form of fundamental rules and principles by which a nation or state is governed, or by which individual members of a body politic are to regulate their social actions."[15]   So a domestic government would be a group within the lands of the United States that operates through some form of ruling principles.   The main body of § 101(27)[16] embraces virtually every form of domestic government including, municipalities, States and their instrumentalities, and the federal government.[17]  After examining the statute, the question remains: To what does the phrase following the semicolon "other ... domestic government" refer?

An important statutory maxim of interpretation requires a court to give operative effect to every word Congress used.[18]   Because in § 101(27) all other forms of domestic government prior to the semicolon are enumerated, if the phrase following the semicolon is not read as referring to Indian tribes and other indigenous peoples, the phrase becomes meaningless.   There are no other forms of domestic government that have not already been specified.

Reading "other ... domestic government" as referring to Indian tribes is not without precedent.   Historically, Indian tribes have also been called "domestic dependent nations" by both the judiciary and the executive branch.[19]   The Supreme Court has characterized Indian tribes as "domestic dependent nations."[20]   And a recent Executive Order interpreting the Indian Self Determination and Education Assistance Act, 25 U.S.C. § 450 *et seq.*, characterized Indian tribes as "domestic dependent nations."[21]   The fact that Indian tribes have been referred to as "domes-

---

**14.**   *Black's Law Dictionary* 434 (5th ed.1979).

**15.**   *Id.* at 625.

**16.**   Section 101(27) defines governmental unit as "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state;  or other foreign or domestic government."  11 U.S.C. § 101(27).

**17.**   Section 101(40) further defines a municipality as "political subdivision or public agency or instrumentality of a State."  11 U.S.C. § 101(40).   State is further defined to include "the District of Columbia and Puerto Rico, except for the purpose of defining who may be a debtor under Chapter 9 of this title."   11 U.S.C. § 101(52).

**18.**   *Walters v. Metropolitan Educ. Enters.*, 519 U.S. 202, 208, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997).

**19.**   41 Am.Jur.2d *Indians* § 8 also refers to Native American tribes as domestic dependent nations.

**20.**   *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (quoting *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831)).

**21.**   *See* Executive Order No. 13,175, 65 Fed. Reg. 67,249 (Nov. 6, 2000).   Section 2 delineates the fundamental principles of the Executive Order and provides in pertinent part:

In formulating or implementing policies that have tribal implications, agencies shall be guided by the following fundamental principles
(a) The United States has a unique legal relationship with Indian tribal governments as set forth in the Constitution of the United States, treaties, statutes, Executive Orders, and court decisions.   Since the formation of the Union, the United States has recognized Indian tribes as domestic dependent nations under its protection.   The Federal Government has enacted numerous statutes and promulgated numerous regulations that establish and define a trust relationship with Indian tribes.
(b) Our Nation, under the law of the United States, in accordance with treaties, statutes, Executive Orders, and judicial

tic dependent nations" incorporates them into § 106(a). If an Indian tribe is a "domestic dependent nation" then it is also an "other ... domestic government."

Finally, it seems ludicrous that Congress would abrogate virtually every potential claimant to sovereign immunity and not include Indian tribes, when bankruptcy law sets out not only to regulate bankruptcy but to make it uniform. Which brings us to the issue of whether § 106(a) is constitutional with respect to Indian tribes. The majority did not address this question.

Indian tribes do have the common-law immunity from suit traditionally enjoyed by sovereign powers.[22] While an Indian tribe retains some measure of sovereign immunity, that immunity is limited and may be divested by Congress.[23] Congress's plenary power with respect to Indians clearly gives Congress the power to abrogate Indian sovereign immunity in the Bankruptcy Code. Even in the absence of the Congressional plenary power over Indian tribes, the Constitutional instruction to establish uniform bankruptcy laws would be enough to give Congress the authority to abrogate Indian sovereign immunity.

Pursuant to the Constitution, Congress is directed to establish "uniform laws on the subject of Bankruptcies throughout the United States."[24] The word "uniform" is of particular importance. A statute will be "uniform in its operation when it operates equally upon all persons who are brought within the relations and circumstances provided for; when all persons under the same conditions and in the same circumstances are treated alike and classification is reasonably and naturally inherent in the subject matter."[25] When the Constitution directs Congress to establish uniform laws, the Constitution commands Congress to establish a set of bankruptcy laws of equal applicability to all parties. If this section were read to permit Congress only to make laws, and not abrogate the sovereign immunity of other governments, such as Indian tribes, Congress could not fulfill its constitutional mandate to make uniform the laws because some entities would be treated differently.

Several appellate courts including a panel of this Court disagree with this premise.[26] They have limited the constitutional dictates in art. I, § 8, cl. 4, by interpreting that section as empowering Congress

decisions, has recognized the right of Indian tribes to self-government. As domestic dependent nations, Indian tribes exercise inherent sovereign powers over their members and territory. The United States continues to work with Indian tribes on a government-to-government basis to address issues concerning Indian tribal self-government, tribal trust resources, and Indian tribal treaty and other rights. *Id.*, 65 Fed.Reg. at 67249.

22. *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670.

23. *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) ("The sovereignty that the Indian tribes retain is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance.").

24. U.S. Const. art. I, § 8, cl. 4.

25. *Black's Law Dictionary* 1373 (5th ed.1979).

26. See, e.g., *Nelson*, 301 F.3d at 826–34; *Mitchell v. Franchise Tax Board (In re Mitchell)*, 209 F.3d 1111, 1118–21 (9th Cir.2000); *Sacred Heart Hosp. v. Commonwealth of Pa. Department of Pub. Welfare (In re Sacred Heart Hospital)*, 133 F.3d 237, 243 (3d Cir.1998); *Department of Transp. & Dev. v. PNL Asset Mgmt. Co. LLC. (In re Fernandez)*, 123 F.3d 241, 242–45 (5th Cir.1997), *amended by* 130 F.3d 1138, 1139 (5th Cir.1997); *Schlossberg v. State of Md. Comptroller of Treasury (In re Creative Goldsmiths)*, 119 F.3d 1140, 1145–46 (4th Cir.1997); *see Straight v. Wyoming Dep't of Transp. (In re Straight)*, 248 B.R. 403, 416–21 (10th Cir. BAP 2000).

only to legislate and not to enforce bankruptcy laws.[27] On this basis, these courts have concluded that Congress cannot abrogate the sovereign immunity of the states. By contrast, recently, in *Hood v. Tennessee Student Assistance Corp.*, 319 F.3d 755 (6th Cir.2003), the Sixth Circuit found that § 106(a) was a valid abrogation of state sovereign immunity based on a constitutional compact between the states as expressed through the Constitution's uniformity requirement.

In *Hood*, after examining the Federalist Papers and early Supreme Court decisions, the Constitution, and the ratification debates, the Sixth Circuit reasoned that the Eleventh Amendment only restored, not changed, the assumption at the Constitutional Convention that the states would have certain immunities and would not have others.[28] Thus, because the Eleventh Amendment was the restoration of an already existing agreement, the Sixth Circuit determined that the Eleventh Amendment could not and did not disturb the structure of other compacts entered into during the Constitutional Convention.[29] One such compact was that Congress could make "uniform" laws over bankruptcy and

27. In *Seminole* the Supreme Court stated:

Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

517 U.S. at 72–73, 116 S.Ct. 1114 (footnote omitted). In *Alden v. Maine*, the Supreme Court admitted that Congress had the authority to directly regulate a state through its Article I powers. *Alden v. Maine*, 527 U.S. 706, 754, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Reasoning from *Seminole* and *Alden*, many courts have concluded that Congress cannot waive a State's sovereign immunity under any of its Article I powers.

28. *Hood*, 319 F.3d at 763–67.

29. *Id.* This reasoning has been called the "plan of the Convention theory." *See Nelson*, 301 F.3d at 833 n. 15. The Supreme Court recently used the term "plan of the Convention" in *Alden*, 527 U.S. at 713, 119 S.Ct. 2240, when it stated that the states had absolute immunity except to the extent that it was "altered by the plan of the Convention. . . ." The phrase is important as it originates from The Federalist No. 81, where Alexander Hamilton explained:

It is inherent in the nature of sovereignty not to be amenable to the suit of an individual WITHOUT ITS CONSENT. This is the general sense, and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union. Unless, therefore, there is a surrender of this immunity in the plan of the of the convention, it will remain with the States. . . .

The Federalist No. 81, at 422 (Alexander Hamilton) (George W. Carey & James McClellan eds., 2001) (emphasis in original). Further in the text, Hamilton cross-references The Federalist No. 32 when he states: "The circumstances which are necessary to produce an alienation of State sovereignty were discussed in considering the article of taxation, and need not be repeated here." *Id.* Hamilton discusses taxation in The Federalist No. 32. There he states that there are three exemptions to state sovereign immunity. One of those exemptions may be found in Congress's authority " 'to establish an UNIFORM RULE of naturalization throughout the United States.' This must necessarily be exclusive; because if each State had power to prescribe a DISTINCT RULE, there could not be a UNIFORM RULE." The Federalist No. 32, at 155 (Alexander Hamilton) (emphasis in original). However, the reason for the cross-reference is unclear. As several commentators have observed, it is difficult to understand the purpose of the cross-reference because The Federalist No. 81 and the Federalist No. 32 are talking about different aspects of sovereignty. The former refers to a State's sovereign immunity from suit, the latter is discussing the federal government's legislative and regulatory power. It is in the ambiguity between the two cross-references

naturalization.[30] The Sixth Circuit concluded that this grant was one of exclusive jurisdiction, and in entering this agreement, the states ceded their sovereign immunity.[31]

I agree with the Sixth Circuit's reasoning in *Hood.* Although, as observed above, the sovereign immunity of an Indian tribe is not coextensive with that of a State, there are similar policy implications at stake. Bankruptcy should provide a single federal forum to ensure uniform procedural treatment for every type of claimant.[32] Uniformity cannot be achieved where the laws do not have general applicability.[33] Creating a distinction between regulation and legislation with respect to the states creates exactly what bankruptcy laws seek to avoid, preferences.[34] If a state does not waive its immunity, it may get paid first and very likely to the exclusion of other creditors.

In the absence of any kind of uniformity requirement, not only are states preferred, but they will have no accountability. For example, when an individual files under one of the chapters in the bankruptcy code, the automatic stay goes into effect.[35] With certain exceptions, not relevant here, all actions to "collect, assess, or recover a claim against the property of the debtor"

that the differences arise between those who subscribe to the plan of the Convention theory or the uniformity theory and those who subscribe to the geographic theory discussed *infra.*

**30.** *Hood,* 319 F.3d at 763.

**31.** *Id.* at 767. The uniformity theory expressed in *Hood* was first articulated by Leonard H. Gerson in a law review article. *See* Leonard H. Gerson, *A Bankruptcy Exception to Eleventh Amendment Immunity: Limiting the Seminole Tribe Doctrine,* 74 Am. Bankr. L.J. 1 (2000). The first bankruptcy court to adopt it was *Bliemeister v. Industrial Comm'n (In re Bliemeister),* 251 B.R. 383 (Bankr. D.Ariz.2000). *But see Nelson,* 301 F.3d at 833 (rejecting this argument on the grounds that there is nothing in Article I indicating that the States consented to being sued in the bankruptcy court).

**32.** *See* Jonathan C. Lipson, *Fighting Fiction with Fiction—The New Federalism in (a Tobacco Company) Bankruptcy,* 78 Wash. U.L.Q. 1271, 1333–36 (2000). *See also* Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory,* 41 Wm. & Mary L.Rev. 743 (2000). Brubaker observes:

> [B]ankruptcy "law," for the most part, functions not to create distinct federal grounds for recovery or relief, but to create an alternative means for enforcing existing substantive rights, most of which are grounded in state law. The historical role

of bankruptcy has been to provide a centralized mechanism for collection of a debtor's assets and distribution of those asserts among all of the debtor's creditors, and in our Anglo–American experience, bankruptcy's centralized collection-distribution function has been administered as a judicial process. Thus, it is perfectly logical to conclude that congressional power to enact uniform national bankruptcy "laws" necessarily, and even primarily, envisions the power to place adjudication of all disputes incident to administering bankruptcy estates in federal court.

*Id.* at 807–08 (footnotes omitted).

**33.** In *Fernandez* the majority noted that the uniformity requirement was one only of geography. 123 F.3d at 244 (quoting *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 172, 67 S.Ct. 237, 91 L.Ed. 162 (1946)(Frankfurter, J., concurring)). *Hood* observes that relying on Justice Franklin's concurrence is inconsistent with the majority opinion in *Vanston. Hood,* 319 F.3d at 763. Pursuant to the majority opinion in *Vanston,* "federal courts must do more than treat state laws uniformly; federal courts must enforce federal bankruptcy law." *Id.*

**34.** *See Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (stating "Equality of distribution among creditors is a central policy of the Bankruptcy Code.").

**35.** *See* 11 U.S.C. § 362.

are stayed.[36] Violations of the automatic stay are subject to the jurisdiction of the bankruptcy court.[37] However, what happens if a state violates the automatic stay? If the bankruptcy court has no subject matter jurisdiction over the state because of its sovereign immunity, then no federal court can enforce the law. The state is free to proceed in its own courts. There can be no power to regulate without its twin power to enforce.

Some commentators have suggested that bankruptcy laws can be enforced through the *Ex parte Young* Doctrine.[38] There are courts that have agreed with this theory, reasoning that because bankruptcy courts are courts of equity and their orders are declaratory, that in the absence of the subject matter jurisdiction to proceed against the state, a debtor may proceed against state officers.[39] While this theory is attractive, it does not really address the uniformity requirement in the Constitution.[40] It merely veils the issue.

The uniformity requirement of the bankruptcy clause arose in a specific historical context. Prior to the Constitution, states regulated bankruptcy. States could and did imprison debtors.[41] The laws were different from state to state.[42] The bankruptcy clause was meant to address this situation by bringing bankruptcy into the federal realm and creating a national uniform law.[43] However, if states or Indian tribes do not have to submit to the federal law, if their liens cannot be avoided, if there is no means of regulating whether states or Indian tribes observe bankruptcy law, then there is no national law. While some states may waive their sovereign immunity, others will not. While some states may honor the federal law, others will not. In the absence of judicial recognition that the uniformity requirement in the Constitution mandates that Congress has the right to abrogate the sovereign immunity of all governments operating within the United States, we will be back at our

---

**36.** 11 U.S.C. § 362(a)(6).

**37.** 11 U.S.C. § 362(h).

**38.** Ralph Brubaker, *Of State Sovereign Immunity and Prospective Remedies: The Bankruptcy Discharge as Statutory* Ex parte Young *Relief,* 76 Am. Bankr.L.J. 461, 563 (2002). Brubaker argues that a bankruptcy discharge order is a prospective declaratory and injunctive decree that fulfills "both the function and form of permissible *Ex parte Young* relief against state officials." *Id.* at 467. He rejects the uniformity theory on the grounds that it suffers from overbreadth and is not consistent with our historical traditions. *Id.* at 478–83.

**39.** *See, e.g., Goldberg v. Ellett (In re Ellett),* 254 F.3d 1135, 1146–47 (9th Cir.2001) (finding that the *Ex parte Young* doctrine gives a bankruptcy court the power to enforce its orders).

**40.** As the Supreme Court has observed, the *Ex parte Young* Doctrine is a fiction. *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 269–70,

117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Basically the *Ex parte Young* Doctrine skirts the issue of a state's sovereign immunity by abrogating it through the back door by implicating state officials.

**41.** Brubaker, supra note 38, at 507.

**42.** *Bliemeister,* 251 B.R. at 390–91. *Bliemeister* observes:

> Indeed, some states had passed private acts to relieve individual debtors, which raised sovereignty questions when applied to creditors from other states and undoubtedly led to the concern for uniformity. Consequently bankruptcy law, and particularly the discharge, was very much an issue involved with states' sovereignty, because it was a limitation on the power of the sovereign to imprison debtors and punish traitors, or to grant individual relief.

*Id.* (citation omitted).

**43.** Brubaker, *supra* note 38, at 510 n. 206.

historical starting point. For these reasons, I would reverse the decision of the bankruptcy court and remand with instructions to avoid the lien of the Cherokee Nation if the bankruptcy court found that the other requirements of § 522(f) were established.